**IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS PEORIA DIVISION**

JOSEPH MURPHY,

               *Plaintiff*,

         v.

CURTIS BAILEY, *et al.*,

               *Defendants*.

CASE NO. 1:22-cv-01266-JEH

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION
FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

**INTRODUCTION**

Plaintiff Andreya Montrise is a transgender woman. While housed at Pontiac Correctional Center in 2022, Defendants physically and sexually assaulted her and denied her medical attention. As set forth herein, Defendants thwarted Plaintiff's attempts to comply with administrative procedures. While an inmate must first exhaust available remedies, they "need not exhaust unavailable ones." For this reason, the Court should deny Defendants' Renewed Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. Dkt. 88 ("Motion").

At the very least, a *Pavey* hearing is required to assess Plaintiff's claims. Defendants did not bother to take Plaintiff's deposition yet in this case. Many genuine issues of fact exist the preclude a ruling as a matter of law that Plaintiff failed to exhaust her remedies prior to filing suit. Defendants themselves conceded a *Pavey* hearing is appropriate here. Dkt. 66 at ¶ 27; *see* Dkt. 85 at 3-4.

**RESPONSE TO DEFENDANTS' UNDISPUTED MATERIAL FACTS**

**A.    Undisputed Material Facts**

Plaintiff admits the undisputed material facts in ¶¶ 1, 2, 3, 4, 5, 9, 10, 11, 12, 14, 17, 18, 19, 21, 24, 25, 29, 30, 31, 32, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 50, 51, 52, 53, 54, 55, 57, 58, 61, 62, 63, 64, 65, 66 and 68 of Defendants' Motion.

**B.    Disputed Material Facts**

1.    Plaintiff disputes ¶ 6 of Defendants' Motion. A grievance procedure was not available for all individuals in custody at Pontiac Correctional Center ("Pontiac"). Plaintiff was denied a grievance procedure because Pontiac Officers refused to provide Plaintiff grievance forms when requested, did not allow Plaintiff to submit grievances, and intimidated and threatened Plaintiff from submitting grievances. Dkt. 73-11, at 5-9, Pl. Resp. to Brown's Rogs.

2.    Plaintiff disputes ¶ 7 of Defendants' Motion. The first step of the grievance process

is not always for an individual in custody to fill out a grievance form and to deposit the form in one of the grievance boxes at Pontiac. For example, the first step of the grievance process can be to verbally report a grievance if the grievance concerns sexual assault. Ex. 1, Dep. Ruiz 64:4-15; Ex. 2, Dep. Dayton 78:22-79:18; Ex. 3, Dep. Attig 57:6-13; 58:10-23; Dkt. 73-5, IDOC000612-16, Pontiac Orientation Manual.

3.      Plaintiff disputes ¶ 8 of Defendants' Motion. Not all grievances must be filed within 60 days of the relevant event or occurrence. A grievance can be submitted without filing a grievance if the grievance concerns sexual assault. *Id.* Additionally, an individual may receive an exemption to the grievance process's normal processing for timeframe constraints if the individual in custody can reasonably show why the grievance was not submitted in a timely manner. Dkt. 73-4 ¶ 17, Decl. Leslie; Ex. 4, Dep. Leslie 65:11-19.

4.      Plaintiff disputes ¶ 13 of Defendants' Motion. All issues in a grievance are not always investigated and evaluated and all information is not always gathered. Grievances are not always substantiated or unsubstantiated. Ex. 4, Dep. Leslie 34:3-35:8.

5.      Plaintiff disputes ¶ 15 of Defendants' Motion. All incarcerated individuals are not granted the same rights to the grievance process regardless of their status. Plaintiff was denied the grievance process. Dkt. 73-11, at 5-9.

6.      Plaintiff disputes ¶ 16 of Defendants' Motion. Pontiac did not have a portable grievance box taken around to individuals on lockdown status during the time period in question. Ex. 4, Dep. Leslie 58:21-59:1.

7.      Plaintiff disputes ¶ 20 of Defendants' Motion. The only grievance box is a red box. There is no grey grievance box. Ex. 5, Dep. Williams 101:12-19.

8.      Plaintiff disputes ¶ 22 of Defendants' Motion. There is no grey grievance box. *Id.*

9.      Plaintiff disputes ¶ 23 of Defendants' Motion. A key is not the only way to physically access the contents of a grievance box. The grievance boxes were the size of a mailbox and have a mailbox slot that a person could fit their hand into up to the wrist. *Id.* at 100:5-14.

10.     Plaintiff disputes ¶ 26 of Defendants' Motion. Plaintiff's status and location of confinement at Pontiac between July 2022 and September 2022 would have an effect on her access to filing a grievance and the IDOC's review of any grievance filed during that time. Individuals are not granted the same rights to the grievance process regardless of their status. Plaintiff was denied the grievance process. Dkt. 73-11, at 5-9.

11.     Plaintiff disputes ¶ 27 of Defendants' Motion. Daily during the 3pm to 11pm shift, the grievance boxes were brought around the galleries, and inmates could place their grievances in the box but usually the correctional officer with the grievance box placed the grievance in the box. Ex. 5, Dep. Williams 121:18-122:22.

12.     Plaintiff disputes ¶ 28 of Defendants' Motion. If, during the time the grievance box is being brought around the galleries, an individual wanting to file a grievance is in restrictive housing, it is not always the case that the cuffing hatch of the cell is then opened and the individual places the grievance in the box themselves. Individuals in custody could place their grievances in the box but usually the correctional officer with the grievance box placed the grievance in the box. *Id.* If the facility is on a lockdown, there is not a smaller handheld box in every control cage for every cell house that is brought around to all cells. The only grievance box is the red grievance box. *Id*. at 101:12-19.

13.     Plaintiff disputes ¶ 30 of Defendants' Motion. Individuals in the Mental Health Units are not granted the same rights to the grievance process as other persons in custody. While on crisis watch, inmates are not allowed pens. *Id.* at 123:4-13.

14.    Plaintiff disputes ¶ 33 of Defendants' Motion. Grievances involving sexual assault do not need to be made on a grievance form after the assault is reported. Ex. 1, Dep. Ruiz 64:4-15; Ex. 2, Dep. Dayton 78:22-79:18; Ex. 3, Dep. Attig 57:6-13; 58:10-23.

15.    Plaintiff disputes ¶ 34 of Defendants' Motion. The grievance process was unavailable to Plaintiff from July 19, 2022 until she was able to file grievances regarding the events alleged on August 19, 2022 and September 2, 2022. Dkt. 73-11, at 5-9; Dkt. 73-21, IDOC000033-36, Aug. 19, 2022 Grievance; Dkt. 73-24, IDOC000013-14, Sept. 2, 2022 Grievance.

16.    Plaintiff disputes ¶ 69 of Defendants' Motion. Correctional Officer Christopher Williams, who was in charge of bringing Plaintiff's food and accompanied her any time she left her cell, told Plaintiff that "[b]ack in the day we used to do stuff to people's food like put glass and razors in their food." Dkt. 73-11, at 5-9. An inmate several cells down from Plaintiff said that Williams said "Back in the day it would have been a razor in this tray," in reference to Plaintiff's tray. *Id.* Williams was one of the correctional officers that took the grievance box to Plaintiff's cell and therefore had access to grievances Plaintiff submitted. *Id.* Williams refused to collect grievances from Plaintiff. *Id.*

17.    Plaintiff disputes ¶ 70 of Defendants' Motion. Correctional Major Travis Bantista, along with Correctional Officer Williams, stood by Plaintiff's cell and made threats by mimicking the moans and sounds of someone being beaten, and said things like "Oh he was crying like a little bitch after we maced him." *Id.* Plaintiff understood that they were trying to show Plaintiff that they had harmed other people, and would harm her too if she spoke out. *Id.* Bantista had access to grievance boxes and their contents during June 2022 to October 2022. Ex. 5, Dep. Williams 100:5-14. Bantista refused to collect grievances from Plaintiff. Dkt. 73-11, at 5-9.

18.    Plaintiff disputes ¶ 71 of Defendants' Motion. Defendant Bailey had access to the

grievance box during June 2022 to October 2022. Ex. 5, Dep. Williams 100:5-14. Bailey was present in the proximity of Plaintiff following the July 27, 2022 assault and refused to provide Plaintiff with grievance forms and threatened and intimidated her. 73-11, at 5-9. He retaliated against Plaintiff by submitting a false and manufactured ticket against her. *Id.*

19.     Plaintiff disputes ¶ 72 of Defendants' Motion. Defendant Dayton had access to the grievance box. Ex. 5, Dep. Williams 100:5-14.

20.     Plaintiff disputes ¶ 73 of Defendants' Motion. Defendant Attig had access to the grievance box during June 2022 to October 2022. *Id.*

21.     Plaintiff disputes ¶ 74 of Defendants' Motion. Defendant Bailey had access to the grievance box during June 2022 to October 2022. *Id.*

### C.     Disputed Immaterial Facts

There are no facts that are disputed and immaterial.

### D.     Undisputed Immaterial Facts

1.     Plaintiff admits ¶¶ 45-48, 59-60, and 67 of Defendants' Motion but those facts are immaterial because Plaintiff did not allege the events of June 7, 8 or 24, 2022, August 9 or 10, 2022, or September 19, 2022 in Plaintiff's complaint. Dkt. 61, at 1-13, Plaintiff's First Amend. Complaint.

2.     Plaintiff admits ¶ 49 of Defendants' Motion but it is immaterial when Plaintiff signed and filed a Motion and Affidavit to Proceed in District Court without Prepaying Fees or Costs. Those events have no impact on Plaintiff's claims or exhaustion of administrative remedies.

3.     Plaintiff admits ¶ 56 of Defendants' Motion but it is immaterial when Plaintiff requested and received from her clinical counselor a copy of her trust fund account at Pontiac. This date has no impact on Plaintiff's claims or exhaustion of administrative remedies.

### E. Additional Material Facts

1. Once per day, a correctional officer took the red grievance box to the inmates' cells so that they could submit grievances. Ex. 5, Dep. Williams 103:5-7, 105:16-22, 112:18-113:9-22. The correctional officer was not accompanied by any other Pontiac staff. *Id.* At times, there was no other staff to witness the correctional officer take the grievance box to the inmates. *Id.*

2. No IDOC staff supervised the correctional officer take the red grievance box to the inmates' cells. *Id.*

3. The correctional officer that took the red grievance box to the inmates' cells did not keep a log to record that the correctional officer took the grievance box to the inmates each day. *Id.*

4. The grievance officers never communicated with the correctional officer that took the red grievance box to the inmates' cells to check that the grievance box was taken to the inmates. *Id.*

5. The correctional officer responsible for taking the red grievance box to Plaintiff was not taught how to collect grievances and there were no procedures in place to follow. *Id.*

6. During June 2022 to August 2022, Correctional Officer Christopher Williams was one of the correctional officers in charge of taking the red grievance box to Plaintiff's cell so that Plaintiff could submit grievances. *Id.* at 17:10-15, 18:20-23, 36:14-16.

7. Correctional Officer Christopher Williams admitted that he wrote an inappropriate disciplinary ticket against Plaintiff because Plaintiff had a reputation for filing PREA complaints. *Id.* at 52:13-53:22, 54:12-15, 59:18-62:14; Dkt. 73-25, IDOC000011-12, Sept. 7, 2022 Grievance.

8. Correctional Officer Christopher Williams took the grievance box to the inmates' cells around the same time every day but, having no procedure to follow in performing this duty, did not announce to the inmates that he was taking the red grievance box to the inmates' cells. Ex.

5, Dep. Williams 105:16-22, 107:3-19, 109:19-110:1. An inmate wanting to drop a grievance in the grievance box would have to recognize it was the time the grievance box was supposed to be taken to their cells, see or hear the grievance box being moved around their cell house, or hear an inmate shouting that the grievance box was being wheeled around their cells. *Id.*

9. To submit a grievance when the correctional officer took the red grievance box to the inmates' cells, the correctional officer would typically grab the grievance and place it into the box. *Id.* at 121:18-122:10. If inmates wanted to submit the grievances without the correctional officer handling the grievance, then they would have to request that the correctional officer open their cuff hatch so that the inmates could place their grievances in the box. *Id.*

10. Inmates could also submit grievances by placing grievances in the grievance box at the flag area of their cell house but only with a correctional officer present. Ex. 5, Dep. Williams 121:4-17; Ex. 1, Dep. Ruiz 62:15-63:2.

11. Inmates could also submit a grievance by writing to the grievance office to request they pick up a grievance. Ex. 1, Dep. Ruiz 12:11-13:25, 61:21-62:14. This method relies on correctional officers to deliver the mail to the grievance office. *Id.* Alternatively, an inmate could talk to a grievance officer when a grievance officer walked around the cell house in the company of a correctional officer. *Id.*

12. At times, there are no grievance forms available for a few days. Ex. 5, Dep. Williams 118:8-11.

13. Correctional officers are made aware of grievances filed against them. *Id.* at 55:15-18.

14. When an inmate makes an allegation pursuant to the Prison Rape Elimination Act ("PREA") against a correctional officer, Pontiac moves the accused correctional officer or the

inmate to a separate gallery in the cell house or to a separate cell house. *Id.* at 39:16-40:13. At times, a correctional officer, when accompanied by a Sergeant or an officer of a higher rank, is placed in charge of an inmate that has accused the correctional officer of a PREA violation. *Id.*

15. During 2022, Plaintiff was a transgender woman confined to Pontiac, an all-male prison. *Id.* at 64:14-16.

16. On July 19, 2022, Plaintiff was assaulted and dragged down a hallway by Defendants Dayton and Peters while others looked on. Dkt. 73-11, at 5-9.

17. On July 19, 2022, after being dragged down a hallway, Plaintiff was then assaulted by Defendant Perez. *Id*.

18. Shortly after the July 19, 2022 assault, Plaintiff reported the incident and requested medical attention as documented by Pontiac Crisis Team Member K. Petrovics on July 20, 2022, who wrote that Plaintiff "[r]eports needing medical treatment for head and legs following an incident with security staff yesterday." *Id*.; Ex. 6, IDOC001364, July 20, 2022 Evaluation.

19. Following the July 19, 2022 assault, Plaintiff repeatedly asked for grievance forms from Pontiac staff, but they refused to provide Plaintiff with a grievance form, would not give Plaintiff independent access to a grievance form, and threatened Plaintiff. Dkt. 73-11, at 5-9.

20. On July 22, 2022, Plaintiff filed a grievance directly with the Administrative Review Board ("ARB") reporting that "I've attempted to write grievance I've wrote over 7 grievance and never received either a grievance number nor response I even had multiple staff refuse to even turn my grievance in. I am being discriminated against by medical & security staff & I fear for my safety, so I am sending this to Springfield to exhaust my administrative remedies at it's highest level being that no other level is being in compliance with protocol … I am being neglected out of hatred towards me and my kind, I fear they will allow me to die by trauma and

injury … Please help….” Dkt. 73-16, IDOC000359-361, July 22, 2022 Grievance #1. Plaintiff further reported that she repeatedly asked for medical attention and was refused medical attention, including on July 19, 2022 when Plaintiff requested medical attention by Mental Health Provider (“MHP”) Carman and she along with multiple mental health staff made incident reports and relayed Plaintiff's need for medical attention. *Id.*

21.    On July 22, 2022, Plaintiff filed another grievance directly with the ARB reporting the events of July 19, 2022. Plaintiff again reported that Pontiac staff did not allow Plaintiff to submit her grievance and so sent the grievance directly “to Springfield to exhaust” her remedies and again expressed fear for her safety. Dkt. 73-17, IDOC000362-364, July 22, 2022 Grievance #2.

22.    On August 1, 2022, the ARB sent Plaintiff's two grievances from July 22, 2022 back to her for failure to submit her grievances through Pontiac staff, which, as Plaintiff had expressed, she could not do. Dkt. 73-16, IDOC000359-361; Dkt. 73-17, IDOC000362-364.

23.    On July 23, 2022, Plaintiff was assaulted by Defendant Anderson. Pontiac staff continued to refuse to provide Plaintiff with grievance forms and refused to allow her to submit grievances. Dkt. 73-11 at 5-9, 13-14; Dkt. 73-1 at 13-14, Pl. Resp. to Requests for Admission.

24.    On July 27, 2022, Plaintiff was sexually assaulted by Defendant Bailey while Defendant Attig stood by. Dkt. 73-11, at 5-9.

25.    Plaintiff reported the sexual assault of July 27, 2022 immediately, including to the qualified MHP Megan Martin, who wrote on July 28, 2022, “Murphy alleges an incident of sexual misconduct by security staff. Murphy alleges that a male staff member searched and assaulted them.” Dkt. 73-11, at 5-9; Ex. 7, IDOC001382, Martin Report.

26.    An inmate can report being sexually assaulted by Pontiac staff in several ways,

including submitting a grievance or reporting it to medical or mental health staff. Ex. 1, Dep. Ruiz 64:4-15; Ex. 2, Dep. Dayton 78:22-79:18; Ex. 3, Dep. Attig 57:6-13; 58:10-23; Dkt. 73-5, IDOC000612-16. Grievances of sexual assault allegations do not need to be made on a grievance form once they are reported to Pontiac staff and a report is written the investigation begins immediately. *Id.*

27.     Plaintiff reported the sexual abuse to medical staff, Internal Affairs Officers, and Illinois State Police and went to the hospital where a rape kit was performed. Internal Affair initiated an investigation. Ex. 10, IDOC002448, Jan. 31, 2023 Illinois State Police Letter; Ex. 7, IDOC001382; Ex. 11, IDOC002469-73, July 29, 2022 Illinois State Police Field Report; Ex. 12, IDOC002486-2488, July 28, 2022 IDOC Investigational Interview.

28.     Pontiac staff continued to refuse to provide Plaintiff with a grievance form, or accept grievances. Dkt. 73-11, at 5-9. However, Plaintiff was able to obtain a grievance form from a fellow inmate, and to the best of Plaintiff's recollection, a different inmate mailed the grievance form to Springfield on Plaintiff's behalf, because staff at Pontiac prevented Plaintiff from submitting a grievance. *Id.* Plaintiff was scared for her safety and wellbeing, and because she was being denied access to grievance forms and an ability to securely submit them, she sent the grievance to Springfield as a matter of last resort. *Id.*

29.     Defendant Bailey was present in the proximity of Plaintiff following the July 27, 2022, assault, and refused to provide Plaintiff with access to grievance procedures, as well as by threatening and intimidating her. *Id.* He retaliated against Plaintiff by submitting a false and manufactured ticket against her. *Id.*

30.     Defendant Dayton also was around Plaintiff multiple times after the assaults. *Id.* He refused to provide Plaintiff with access to a grievance form and a locked grievance box, and

retaliated against Plaintiff by submitting manufactured and false tickets against her. *Id*.

31.     Staff and correctional officers at Pontiac retaliated against Plaintiff for grieving the assaults she experienced. *Id.* Correctional Officers, including Correctional Officer Williams and Major Bantista would stand by her cell and make threats by mimicking the moans and sounds of someone being beaten, and said things like "Oh he was crying like a little bitch after we maced him." *Id.* Plaintiff understood that they were trying to show Plaintiff they had harmed other people, and would harm her too if she spoke out. *Id*.

32.     Correctional Officer Williams, who was in charge of bringing Plaintiff's food and accompanied her any time she left her cell, said "Back in the day we used to do stuff to people's food like put glass and razors in their food." *Id.* An inmate several cells down from Plaintiff said that Correctional Officer Williams said "Back in the day it would have been a razor in this tray," in reference to Plaintiff's tray. *Id.* These are just examples of the intimidation that Plaintiff experienced to the best of her present recollection, which discouraged and intimidated her. *Id*.

33.     Plaintiff reported this retaliation, including to qualified mental health practitioner Thomas Potoski on July 28, 2022, who wrote that Plaintiff "alleges that Sgt Bailey put his 'penis' in client Murphy's mouth nonconsensual. Client further alleges that Pontiac is 'retaliating against [her].' Client 'fears for [her] safety.' Client alleges this happened when 'placed in the holding tank.'" *Id*.; Ex. 8, IDOC002479-2482, Potoski Report.

34.     During this time period, even when Plaintiff was able to obtain grievance forms from other inmates, Pontiac staff and correctional officers would not accept her grievances. Dkt. 73-11, at 5-9. Each night an officer wheeled a secured and locked grievance box through the halls, but would not accept grievances from Plaintiff, instead stating things like "no I am not letting you write shit up faggot." *Id.* This locked grievance box was never available to Plaintiff because the

correctional officers circulating the box did not allow her to place her grievances in the box. *Id.*

35.     Plaintiff was not able to use alternative drop off locations for grievances, because she was accompanied by a correctional officer at all times, and was afraid of what they might do to her if they confiscated a grievance, based on the threats from Major Bantista, Correctional Officer Williams, and others. *Id*.

36.     Plaintiff was also uncomfortable using these unsecured grievance boxes, because the contents were accessible and she was afraid that Correctional officers would read her grievance and inflict violence upon her. *Id*.

37.     Plaintiff complained multiple times regarding these threats and retaliatory actions to a qualified MHP at Pontiac, who was the chairperson of Transgender affairs at Pontiac. *Id*.

38.     A fellow inmate who went by the nickname of Kabaar Venson witnessed the threats and intimidation directed at Plaintiff. *Id*.

39.     On August 4, 2022, Plaintiff sent a grievance directly to the ARB reporting the sexual assault of July 27, 2022 and the refusal of Pontiac Staff to accept Plaintiff's grievance. Dkt. 73-18, IDOC000350-352, Aug. 4, 2022 Grievance. Plaintiff wrote "Again I try to turn in grievance multiple times and was refused everytime by Staff telling me they won't help me grieve anything on the[ir] co-workers." *Id.*

40.     Unable to access any relief through the grievance process due to obstruction and intimidation, Plaintiff filed the above captioned action on August 11, 2022. Dkt. 73-11, at 5-9.

41.     In response to her August 4, 2022 grievance plea for help, the ARB responded on August 18, 2022, stating that it "will make the warden and IA aware of allegations", but sent Plaintiff's grievance back to her for failure to submit her grievance through Pontiac staff, despite her reporting that Pontiac staff prevented her from doing so. Dkt. 73-18, IDOC000350-352.

42.     Plaintiff reported her feelings of being unsafe to multiple health practitioners. On August 5, 2022, she reported "not feeling safe" in the North Cell House. Dkt. 73-11, at 5-9; Ex. 9, IDOC001407-1408, Michaels Report.

43.     For the first time, on August 19, 2022, Plaintiff was able to submit a grievance at Pontiac concerning the sexual assault of July 27, 2022. Dkt. 73-21, IDOC000033-36. She also reported the retaliation she suffered for reporting the sexual assault. *Id.* The Chief Administrative Officer responded that her grievance was moot since there was already an ongoing PREA investigation into the sexual assault reported. *Id.*

44.     Plaintiff was also able to submit a grievance on September 2, 2022 reporting the events of July 19, 2022 and July 27, 2022. Dkt. 73-11, at 5-9; Dkt. 73-24, IDOC000013-14. Plaintiff reported that "I am forced to be taken to showers by male C/Os who sexual[l]y harras and assaults me and even when I put in PREAs IA takes weeks to talk to me and the very C/O who assaulted me is always left around me to now with motivation – continue to assault and neglect me." *Id.*

45.     On October 19, 2022, Plaintiff's September 2, 2022 grievance was designated as "MOOT" by the Menard Correctional Center ("Menard"), despite the grievance having been filed at Pontiac, and the incidents giving rise to the grievance having occurred at Pontiac. Dkt. 73-11, at 5-9; Dkt. 44-2, at 1, Response to Sept. 2, 2022 Grievance. Plaintiff does not recall receiving this notification while at Menard. *Id.*

## ARGUMENT

### A.     Standard of Review

Summary judgment is only available if the movant shows "that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute that cannot be resolved without observation of the demeanor of the witnesses in order to evaluate their credibility is inappropriate for summary judgment. *See Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001). The court must view all inferences in the light most favorable to the nonmoving party. *See Regner v. City of Chicago*, 789 F.2d 534, 536 (7th Cir. 1986).

### B.    Legal Standard for Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is an affirmative defense and defendants have the burden to show that plaintiff failed to exhaust administrative remedies. *See Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011).

While an inmate must first exhaust available remedies, they "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An "available" remedy is one that is "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Id.* An administrative remedy is "unavailable" (i) if it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (ii) when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use," or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44; *see Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

### C.    Administrative remedies were unavailable to Plaintiff because Pontiac staff refused to provide Plaintiff grievance forms and refused to let her submit grievances.

Summary judgment is inappropriate when prison officials refuse to give an inmate

grievance forms and repeatedly threaten the inmate when the inmate asks for the forms. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Similarly, the Seventh Circuit found that the grievance process was unavailable when prison staff refused to provide grievance forms to an inmate. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

Here, Plaintiff repeatedly pursued administrative remedies, but Pontiac staff refused to provide Plaintiff with grievance forms and refused to allow Plaintiff to submit grievances. For example, when Pontiac staff took the grievance box to Plaintiff's cell, Pontiac staff would not accept grievances from Plaintiff, stating things like "no I am not letting you write shit up faggot." Dkt. 73-11, at 5-9. Before filing this action, Plaintiff made multiple contemporaneous reports to Pontiac and the ARB that Pontiac staff denied her grievance forms and refused to accept grievances she attempted to submit. *See e.g.*, Dkt. 73-16, IDOC000359-361; Dkt. 73-17, IDOC000362-364; Dkt. 73-18, IDOC000350-352.

### 1. Administrative remedies were unavailable to Plaintiff for the events of July 19, 2022.

On July 19, 2022, Plaintiff was assaulted by Defendants. The next day Plaintiff reported the incident to the Pontiac Crisis Team and requested medical attention. Dkt. 73-11, at 5-9; Ex. 6, IDOC001364. Plaintiff attempted to submit a grievance regarding the assault but Pontiac staff refused to accept her grievance. Dkt. 73-11, at 5-9.

After Pontiac staff refused to allow her to submit her grievance, Plaintiff persisted in attempting to use the grievance process. Three days after the assault on July 22, 2022, Plaintiff mailed two grievances directly to the ARB reporting the events of July 19, 2022 and reporting that multiple Pontiac employees refused to turn in Plaintiff's grievance concerning those events. These two grievances explicitly stated that Plaintiff had to send her grievances directly to the ARB because Pontiac staff did not allow Plaintiff to submit grievances. The ARB sent Plaintiff's

grievances back to her for failure to submit her grievance through Pontiac staff, which, as Plaintiff had expressed, she could not do. *See* Dkts. 73-16, IDOC000359-361, and 73-17, IDOC000362-364.

Unable to access any relief through the grievance process, Plaintiff filed the above captioned action on August 11, 2022. Dkt. 73-11, at 5-9. Plaintiff still sought to comply with procedures where she could. Plaintiff was finally able to submit a grievance on September 2, 2022 reporting the events of July 19, 2022. *Id*.; Dkt. 73-24, IDOC000013-14. When Plaintiff transferred to a new facility, Plaintiff's grievance was deemed moot by Menard, despite the grievance having been filed at Pontiac, and the incidents giving rise to the grievance having occurred at Pontiac. Dkt. 73-11 at 5-9; Dkt. 44-2, at 1. Plaintiff does not recall receiving this notification while at Menard. *Id.*

### 2. Administrative remedies were unavailable to Plaintiff for the events of July 23, 2022.

Shortly after the first assault, Plaintiff was assaulted again by Pontiac staff on July 23, 2022. Pontiac staff refused to provide Plaintiff with grievance forms and refused to allow her to submit grievances. Dkt. 73-11 at 5-9, 13-14; Dkt. 73-1 at 13-14. Plaintiff again did not give up her claims and filed the above captioned action on August 11, 2022. Dkt. 73-11 at 5-9.

### 3. Administrative remedies were unavailable to Plaintiff for the events of July 27, 2022.

On July 27, 2022, Plaintiff was sexually assaulted by Defendant Bailey while Defendant Attig stood by. On July 28, 2022, Plaintiff reported the assault to a Mental Health Professional at Pontiac. Dkt. 73-11 at 5-9; Ex. 7, IDOC001382. Plaintiff also reported the assault to medical staff, Internal Affairs Officers, and Illinois State Police. Plaintiff was taken to the hospital for a rape kit and Internal Affair initiated an investigation. Ex. 10, IDOC002448; Ex. 7, IDOC001382; Ex. 11, IDOC002469-73; Ex. 12, IDOC002486-2488.

Plaintiff attempted to submit a grievance regarding the assault, despite not needing to submit a grievance for sexual assault. Ex. 1, Dep. Ruiz 64:4-15; Ex. 2, Dep. Dayton 78:22-79:18; Ex. 3, Dep. Attig 57:6-13; 58:10-23; Dkt. 73-5, IDOC000612-16. However, Pontiac staff refused to accept her grievance. Dkt. 73-11 at 5-9.

Plaintiff continued to pursue her claims despite being denied access to the grievance process. On August 4, 2022, Plaintiff filed a grievance directly to the ARB reporting the sexual assault of July 27, 2022 and the refusal of Pontiac staff to accept Plaintiff's grievance. Plaintiff wrote "Again I try to turn in grievance multiple times and was refused everytime by Staff telling me they won't help me grieve anything on the[ir] co-workers." Dkt. 73-18, IDOC000350-352. In response to her August 4, 2022 grievance, the ARB responded that it "will make the warden and IA aware of allegations" but sent Plaintiff's grievance back to her for failure to submit her grievance through Pontiac staff, despite her reporting that Pontiac staff prevented her from doing so. *Id.*

Unable to access any relief through the grievance process, Plaintiff filed the above captioned action on August 11, 2022. Dkt. 73-11 at 5-9.

Plaintiff still sought to comply with procedures where she could. Plaintiff was able to submit a grievance on August 19, 2022 concerning the sexual assault of July 27, 2022. Pontiac responded that her grievance was moot since there was already an ongoing PREA investigation into the sexual assault reported. Dkt. 73-21, IDOC000033-36.

Plaintiff also was able to submit a grievance on September 2, 2022 reporting the events of July 27, 2022. Dkt. 73-11 at 5-9; Dkt. 73-24, IDOC000013-14. When Plaintiff transferred to a new facility, Plaintiff's grievance was deemed moot by Menard, despite the grievance having been filed at Pontiac, and the incidents giving rise to the grievance having occurred at Pontiac.

Dkt. 73-11 at 5-9; Dkt. 44-2, at 1. Plaintiff does not recall receiving this notification while at Menard. *Id.*

**D.** **Administrative remedies were unavailable to Plaintiff because Pontiac staff thwarted Plaintiff from taking advantage of the grievance process through intimidation and retaliation.**

In addition to refusing to provide Plaintiff with grievance forms and refusing to allow her to submit her grievances, the grievance process was further unavailable to Plaintiff because Pontiac staff intimidated Plaintiff from filing grievances. Dkt. 73-11 at 5-9. As recognized by the Supreme Court, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016); *see Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

Between June 2022 and August 2022, Correctional Officer Williams, who was one of the correctional officers in charge of taking the grievance box to Plaintiff's cell, refused to allow Plaintiff to submit grievances and threatened Plaintiff for filing grievances and reporting Pontiac staff misconduct. Ex. 5, Dep. Williams 17:10-15, 18:20-23, 36:14-16. Williams believed Plaintiff had a reputation for filing PREA complaints and, as a result, discriminated against her. For example, Williams admitted to writing an inappropriate disciplinary ticket against Plaintiff because of PREA complaints she made. Ex. 5, Dep. Williams 52:13-53:22, 54:12-15, 59:18-62:14; Ex. 73-25, IDOC000011. Similarly, Defendants Bailey and Dayton submitted false tickets against Plaintiff. Dkt. 73-11 at 5-9.

Correctional Officer Williams, who also was in charge of bringing Plaintiff food and accompanied her when she left her cell, also said "Back in the day we used to do stuff to people's food like put glass and razors in their food." Dkt. 73-11 at 5-9. An inmate several cells down from Plaintiff said that Williams said "Back in the day it would have been a razor in this tray,"

in reference to Plaintiff's tray. *Id.*

Correctional Officers, including Williams and Major Travis Bantista, stood by her cell and made threats by mimicking the moans and sounds of someone being beaten, and saying things like "Oh he was crying like a little bitch after we maced him." Plaintiff understood that they were trying to show Plaintiff they had harmed other people, and would harm her too if she spoke out. Dkt. 73-11 at 5-9.

Plaintiff reported this retaliation and intimidation, including to mental health practitioner Thomas Potoski on July 29, 2022, who wrote that Plaintiff "alleges that Sgt Bailey put his 'penis' in client Murphy's mouth nonconsensual. Client further alleges that Pontiac is 'retaliating against [her].' Client 'fears for [her] safety.' Client alleges this happened when 'placed in the holding tank.'" Ex. 8, IDOC002479-2482. Plaintiff reported her feelings of being unsafe in multiple grievances and to multiple health practitioners. *See e.g.*, Dkt. 73-11, at 5-9; Ex. 9, IDOC001407-1408; 73-16, IDOC000359-361; Dkt. 73-17, IDOC000362-364; Dkt. 73-18, IDOC000350-352.

Defendants argue that subjective fear is not a valid excuse for not using the grievance process. *See* Motion at 24-25. But "threatening a prisoner with violence for attempting to use an administrative process makes that process unavailable." *See Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009).

Defendants citation of other others cases is not persuasive. *See* Motion at 25-27. In *Twitty v. McCoskey*, the prisoner failed to exhaust administrative remedies because "there is no suggestion here of any affirmative misconduct on the part of the jail to prevent Twitty from learning about and pursuing the grievance procedure." 226 F. App'x 594, 596 (7th Cir. 2007). Here, there was affirmative misconduct on the part of the correctional staff. In *Boyd v. Corr. Corp. of Am.*, the Sixth Circuit specifically stated that it did not address whether fear of retaliation

makes an administrative remedy unavailable. 380 F.3d 989, 997 (6th Cir. 2004). Instead, the court took issue with the failure to describe the factual basis for fear. *See id.* at 998. In *McDonald v. Henze,* the district court there considered whether subjective beliefs about the futility of the grievance process makes an administrative remedy unavailable and did not consider whether threats and fear of retaliation makes an administrative remedy unavailable. No. 20-C-643, 2022 WL 279587 at *5 (N.D. Ill. 2022).

Additionally, Defendants' reliance on *Ross v. Blake* is unavailing since the Supreme Court there recognized that an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. 632, 643–44 (2016). Here, Plaintiff is claiming that Pontiac staff intimidated Plaintiff from taking advantage of the grievance process. Similarly, Defendants' reliance on *Porter v. Nussle* is misplaced because, while the Supreme Court explains that the PLRA was intended to "promote administrative redress," it does not discuss the matter of subjective fear. 534 U.S. 516, 528 (2002). Unlike *Porter*, Plaintiff made numerous attempts to use administrative redress but was thwarted by Pontiac staff.

### E. Plaintiff's ability to submit other grievances does not negate Plaintiff's inability to submit grievances for the July 19, 22 and 27, 2022 events.

Defendants repeat that the availability of the grievance process for other events somehow negates Plaintiff's arguments of unavailability for the events relevant to the instead case. Motion at 23. Defendants cite no caselaw in support of this proposition and established Seventh Circuit law rejects such a position. Specifically, in *Kaba v. Stepp*, the defendants argued that the plaintiff's ability to file grievances on different events warranted summary judgment. 458 F.3d 678, 685 (7th Cir. 2006). The Court rejected such an argument: "The ability to take advantage of administrative grievances is not an "either-or" proposition. Sometimes grievances are clearly

available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." *Id*. Using this analysis, the Seventh Circuit reversed the district court's grant of summary judgment. *Id.*; *see also Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018).

F. **Even if the Court determines that the grievance process was not unavailable, Plaintiff properly exhausted administrative remedies for the sexual assault of July 27, 2022.**

Grievances concerning sexual assault do not need to be made on a grievance form. An inmate can report being sexually assaulted by Pontiac staff in several ways, including reporting it to medical or mental health staff. Once it is reported, the investigation begins immediately. *See* Ex. 1, Dep. Ruiz 64:4-15; Ex. 2, Dep. Dayton 78:22-79:18; Ex. 3, Dep. Attig 57:6-13; 58:10-23. Even the orientation manual Plaintiff received on intake confirmed that Plaintiff could report sexual abuse numerous ways, including by talking to a staff member *or* filing a grievance. Dkt. 73-5, IDOC000612-16.

Plaintiff reported her sexually assaulted to an MHP at Pontiac the same day it occurred. Dkt. 73-11 at 5-9; Ex. 7, IDOC1382. Plaintiff also reported the assault to medical staff, Internal Affairs Officers, and Illinois State Police. Ex. 10, IDOC002448; Ex. 7, IDOC001382; Ex. 11, IDOC002469-73; Ex. 12, IDOC002486-2488. Thus, before filing the complaint in this matter, Plaintiff properly grieved her sexual assault.

G. **At the very least, a *Pavey* hearing is required to resolve the disputed material fact of whether administrative remedies were available to Plaintiff.**

As set forth above, Plaintiff extensively documented and communicated the unavailability of the grievance process. While Defendants did not bother to take her deposition yet in this case, Plaintiff will confirm this unavailability when called to testify. At the very least, there is a material dispute that cannot be resolved without observation of the demeanor of the witnesses in order to

evaluate their credibility, making this dispute inappropriate for summary judgment. *See Kaba,* 458 F.3d at 686 ("Viewing the evidence in a light most favorable to Kaba, we cannot say that the prison officials met their burden of proving the availability of administrative remedies."); *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001).

A *Pavey* hearing is therefore necessary to resolve factual disputes material to the exhaustion issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Gakuba v. Pannier*, No. 21-1961, 2022 WL 1768843, at *2 (7th Cir. 2022); *Jackson v. Esser*, 105 F.4th 948, 957–58 (7th Cir. 2024). Defendants conceded that if any materials facts remain genuinely disputed then a *Pavey* hearing is appropriate. Motion at 28. As this Court stated, after the summary judgment motion is briefed, the "Court will then set this matter for a *Pavey* hearing, if necessary, upon review of the briefs." Dkt. 85 at 3-4.

## CONCLUSION

Defendants' Motion should be denied. Alternatively, a *Pavey* hearing should be held. Plaintiff requests oral argument.

Dated: May 29, 2025

Respectfully submitted,

*/s/ Abby Parsons*

Abby Parsons
ARNOLD & PORTER KAYE
SCHOLER LLP
700 Louisiana St., Suite 4000
Houston, TX 77002
(713) 576-2442
abby.parsons@arnoldporter.com

Brent P. Ray
ARNOLD & PORTER KAYE
SCHOLER LLP
70 W. Madison St., Suite 3700
Chicago, IL 60602
(312) 583-2325
brent.ray@arnoldporter.com

Rachel Anne Horowitz
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-7834
rachel.horowitz@arnoldporter.com

*Counsel for Plaintiff,*
*ANDREYA MONTRISE*
*(known to IDOC as JOSEPH*
*MURPHY)*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)(4)(B)

I hereby certify that the foregoing complies with the type volume limitation set forth in Local Rule 7.1(B)(4)(b). The foregoing does not contain more than 7,000 words. The document contains 6,942 words.

*/s/ Abby Parsons*
Abby Parsons
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2025, a true and correct copy of the foregoing was filed via the Court's CM/ECF System and all counsel of record were notified by email.

*/s/ Abby Parsons*
Abby Parsons
Counsel for Plaintiff