## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JOSEPH MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 1266-JEH-RLH |
| | ) | |
| *v.* | ) | Judge Jonathan E. Hawley |
| | ) | |
| CURTIS BAILEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### Defendants' Reply in Support of their
### Motion for Summary Judgment on Exhaustion of Remedies

### Introduction

In their motion for summary judgment, Defendants submitted 29 exhibits demonstrating not only that administrative remedies were officially available at Pontiac Correctional Center, but that Plaintiff repeatedly used those remedies—just not for the allegations at issue in this case. Plaintiff claims she couldn't because of threats from security staff. But she admits to drafting and filing 14 grievances between June 10 and September 18, 2022, including one about the July 27 allegations, submitted improperly and directly to the ARB on August 4—with over 52 days remaining on the 60-day grievance deadline. But even if this Court were to excuse her deliberate refusal to use the grievance process at Pontiac, Plaintiff did not wait for the ARB's response before filing suit. She also concedes that, even if she feared retaliation from security staff—the individuals she claims exclusively

threatened her—she could have sought help from mental health professionals, clinical counselors, or other non-security personnel to submit a grievance she had written. She did not.

Plaintiff has not submitted a single sworn statement in support of her claims of intimidation, threats, or obstruction. She relies entirely on unsworn, unverified interrogatory responses, which cannot create a genuine dispute of material fact under Rule 56. Accordingly, a *Pavey* hearing is not warranted. But if the Court finds one necessary, it should be strictly limited to the narrow factual question Plaintiff failed to support with admissible evidence in this briefing: whether she was actually intimidated in a way that rendered all administrative remedies unavailable.

### Response to Plaintiff's Statement of Additional Facts

1.      Once per day, a correctional officer took the red grievance box to the inmates' cells so that they could submit grievances. Ex. 5, Dep. Williams 103:5-7, 105:16-22, 112:18-113:9-22. The correctional officer was not accompanied by any other Pontiac staff. *Id.* At times, there was no other staff to witness the correctional officer take the grievance box to the inmates. *Id.*

**RESPONSE: Objection. The cited testimony reflects only Officer Williams's personal experience and does not establish any uniform practice at Pontiac. Further objecting, Plaintiff's Exhibit 5 omits over 80 pages of deposition transcript. (See Exhibit 1,[1] Dep. of Williams) (complete transcript).**

**Subject to these objections, undisputed that a correctional officer (including Williams) brought the red grievance box once daily. Disputed to the extent Plaintiff implies the grievance process required additional staff presence, which is not supported by the cited material.**

---

[1] Any exhibits referenced here are supplemental, and do not refer to similarly numbered exhibits at ECF No. 73.

2.      No IDOC staff supervised the correctional officer take the red grievance box to the inmates' cells. *Id.*

**RESPONSE: Objection. The cited testimony reflects only Officer Williams's personal experience and does not establish any uniform practice at Pontiac.**

**Subject to the objection, disputed and immaterial, to the extent Plaintiff implies that the absence of supervision made the grievance process unavailable. No policy required staff oversight of this task, and there is no evidence that lack of supervision interfered with Plaintiff's ability to file grievances. Otherwise undisputed.**

3.      The correctional officer that took the red grievance box to the inmates' cells did not keep a log to record that the correctional officer took the grievance box to the inmates each day. *Id.*

**RESPONSE: Objection. The cited testimony reflects only Officer Williams's personal experience and does not establish any uniform policy at Pontiac. Further objection that Plaintiff's Exhibit 5 omits over 80 pages of transcript, excluding critical context. See Ex. 1, Williams Dep. (complete transcript).**
**Subject to these objections, undisputed that correctional officers did not keep a log of circulating the red grievance box. Disputed to the extent it implies no recordkeeping occurred at all—clinical counselors maintained grievance logs. (Exhibit 2, Dep. of Ruiz 24:6–25:15) (complete transcript). The statement is immaterial because Plaintiff submitted over 13 grievances during the relevant period, confirming the process was available regardless of formal logging.**

4.      The grievance officers never communicated with the correctional officer that took the red grievance box to the inmates' cells to check that the grievance box was taken to the inmates. *Id.*

**RESPONSE: Objection. The cited testimony reflects only Officer Williams's personal experience and does not establish any uniform policy at Pontiac. Further objecting that Plaintiff's Exhibit 5 omits over 80 pages of testimony. See Ex. 1, Williams Dep.**

**Subject to these objections, undisputed that grievance officers did not personally check with correctional staff about daily circulation of the box. Disputed and immaterial to the extent Plaintiff suggests this affected availability; Plaintiff is not claiming the box was not circulated or that she missed it. She claims staff expressly refused to take her grievances, which is a different contention.**

5.      The correctional officer responsible for taking the red grievance box to Plaintiff was not taught how to collect grievances and there were no procedures in place to follow. *Id.*

**RESPONSE: Objection. The cited testimony reflects only Officer Williams's personal experience and does not establish any uniform policy at Pontiac. Further objecting that Plaintiff's Exhibit 5 omits over 80 pages of transcript. (See Ex. 1, Williams Dep.) (complete transcript).**

**Subject to and without waiving these objections, disputed and immaterial. While Williams testified he was not formally trained, he described a clear, consistent process he followed to circulate the grievance box and collect its contents. (Ex. 1, Williams Dep. 101:20–115:18.) Immaterial because a correctional officer does not require being" taught how to collect grievances," as the process of collecting a paper and depositing it into a slot is so rudimentarily simple.**

6.      During June 2022 to August 2022, Correctional Officer Christopher Williams was one of the correctional officers in charge of taking the red grievance box to Plaintiff's cell so that Plaintiff could submit grievances. *Id.* at 17:10-15, 18:20-23, 36:14-16.

**RESPONSE: Undisputed and material.**

7.      Correctional Officer Christopher Williams admitted that he wrote an inappropriate disciplinary ticket against Plaintiff because Plaintiff had a reputation for filing PREA complaints. *Id.* at 52:13-53:22, 54:12-15, 59:18-62:14; Dkt. 73-25, IDOC000011-12, Sept. 7, 2022 Grievance.

4

**RESPONSE**: Objection. Plaintiff's Exhibit 5 omits over 80 pages of deposition transcript. See Ex. 1, Williams Dep. (complete transcript).

**Subject to and without waiving these objections, disputed and immaterial. Officer Williams did not admit the ticket was inappropriate. He testified that he used his discretion to issue a disciplinary ticket based on Plaintiff's behavior and her known reputation of threatening PREA claims. (Ex. 1, Williams Dep. 52:13–53:22, 54:12–15, 59:18–62:14.) He did not admit wrongdoing, express regret, or suggest the ticket was false or retaliatory.**

**Immaterial because the September 4, 2022 ticket postdates the filing of this suit and does not relate to the grievance process availability prior to August 11. Plaintiff's September 7 grievance about that same ticket also confirms the process remained available and in use. (ECF No. 73-25.)**

8.     Correctional Officer Christopher Williams took the grievance box to the inmates' cells around the same time every day but, having no procedure to follow in performing this duty, did not announce to the inmates that he was taking the red grievance box to the inmates' cells. Ex. 5, Dep. Williams 105:16-22, 107:3-19, 109:19-110:1. An inmate wanting to drop a grievance in the grievance box would have to recognize it was the time the grievance box was supposed to be taken to their cells, see or hear the grievance box being moved around their cell house, or hear an inmate shouting that the grievance box was being wheeled around their cells. *Id.*

**RESPONSE**: **Disputed and immaterial. Officer Williams described a routine nightly grievance box collection around 9:00 p.m., and testified he never had an inmate tell him they missed the collection period if they wanted to deposit a grievance. (Williams Dep. 105:5–110:13.)**

**The assertion is also immaterial because Plaintiff's theory of unavailability is that staff refused to accept her grievances, not that she didn't know when or how to submit them, of which there were at least three other means of doing so. (Decl. of Leslie ¶ 33, ECF No. 73-4.) Moreover, since there are 60 days to file grievances about issues, there would be 60 opportunities to file in the red, rolling box is the other three means of submitting grievances (i.e., submitting to mental health, clinical counselor, dropping into the fixed dropbox) were not utilized.**

5

9.    To submit a grievance when the correctional officer took the red grievance box to the inmates' cells, the correctional officer would typically grab the grievance and place it into the box. *Id.* at 121:18-122:10. If inmates wanted to submit the grievances without the correctional officer handling the grievance, then they would have to request that the correctional officer open their cuff hatch so that the inmates could place their grievances in the box. *Id.*

**RESPONSE: Objection. The cited deposition testimony reflects only Officer Williams's personal experience and does not establish any uniform institutional practice or policy at Pontiac Correctional Center.**

**Subject to that objection, admitted. But immaterial. Whether the grievance is placed into the box by the officer or through the cuff hatch by the inmate does not affect the availability of the grievance process. There is no evidence that this method prevented Plaintiff—or anyone—from submitting a grievance. If an inmate preferred to use the cuff hatch, they could request it, as Williams testified to. This detail does not show that remedies were unavailable, nor that Plaintiff attempted to use them and was thwarted.**

10.    Inmates could also submit grievances by placing grievances in the grievance box at the flag area of their cell house but only with a correctional officer present. Ex. 5, Dep. Williams 121:4-17; Ex. 1, Dep. Ruiz 62:15-63:2.

**RESPONSE: Objection. The cited testimony reflects only the personal experience of Officers Williams and Ruiz and does not establish a facility-wide policy. Plaintiff also cites Exhibit 5, which omits over 80 pages of deposition testimony.**

**Subject to and without waiving these objections, disputed in part, undisputed in part, and immaterial. Disputed because Officer Williams did not testify that grievances could be submitted only when a correctional officer was present—only that an officer would necessarily be present, as inmates are not left unsupervised. (Ex. 1, Dep. of Williams 121:8-10) ("Q: And would there be a correctional officer present? A: Yeah.")**

**Undisputed insofar as an officer would typically be present at the flag area. The statement is immaterial because Plaintiff's allegation is not that**

**submission methods were unavailable, but that staff "refused" to accept
her grievances in a general, nonspecific sense.**

11.    Inmates could also submit a grievance by writing to the grievance
office to request they pick up a grievance. Ex. 1, Dep. Ruiz 12:11-13:25, 61:21-62:14.
This method relies on correctional officers to deliver the mail to the grievance office.
*Id.* Alternatively, an inmate could talk to a grievance officer when a grievance
officer walked around the cell house in the company of a correctional officer. *Id.*

**RESPONSE: Undisputed and material.**

12.    At times, there are no grievance forms available for a few days. Ex. 5,
Dep. Williams 118:8-11.

**RESPONSE: Disputed and immaterial. Disputed because Officer Bailey
testified grievance forms were always available in his experience. (Ex. 3,
Bailey Dep. 16:23–17:12.) Immaterial because even temporary
unavailability of forms does not render the grievance process unavailable:
inmates have 60 days to grieve most issues and no deadline for sexual
abuse claims. See 20 Ill. Admin. Code § 504.810. Plaintiff received and used
at least 14 grievance forms during the relevant period. (Defs.' SOF ¶¶ 45-
68; Exs. 12–26.)**

13.    Correctional officers are made aware of grievances filed against them.
*Id.* at 55:15-18.

**RESPONSE: Objection. The cited deposition testimony reflects only
Officer Williams's and Ruiz's personal experiences and does not establish
any uniform institutional practice or policy at Pontiac Correctional
Center.**

**Subject to this objection, the statement is disputed and immaterial. The
statement is disputed because Christopher Williams testified that he is
only made aware of grievances about him if the grievance office chooses to
tell him, and has never been informed of a grievance about him by
Plaintiff. (Ex. 1, Dep. of Williams 54:22-55:21.)**

14.    When an inmate makes an allegation pursuant to the Prison Rape
Elimination Act ("PREA") against a correctional officer, Pontiac moves the accused

7

correctional officer or the inmate to a separate gallery in the cell house or to a separate cell house. *Id.* at 39:16-40:13. At times, a correctional officer, when accompanied by a Sergeant or an officer of a higher rank, is placed in charge of an inmate that has accused the correctional officer of a PREA violation. *Id.*

**RESPONSE: Undisputed but immaterial. The presence of an officer previously accused of misconduct does not, by itself, render the grievance process unavailable. Plaintiff submitted multiple grievances during the relevant period, including those alleging PREA violations, which were received and processed by IDOC.**

15.    During 2022, Plaintiff was a transgender woman confined to Pontiac, an all-male prison. *Id.* at 64:14-16.

**RESPONSE: Immaterial and undisputed solely for purposes of this motion and subject to further discovery in the event the Court denies dismissal for failure to exhaust. The statement is immaterial because Plaintiff's self-identification as a transgender person has no relevant or materiality to whether the grievance process or any administrative remedies were available to be used by Plaintiff.**

16.    On July 19, 2022, Plaintiff was assaulted and dragged down a hallway by Defendants Dayton and Peters while others looked on. Dkt. 73-11, at 5-9.

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory answers and does not constitute admissible evidence for purposes of summary judgment under Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Joseph Murphy, and are not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Subject to and without waiving this objection, disputed and immaterial.**

**Disputed, because the statement that Plaintiff was assaulted and dragged down a hallway by Defendants Dayton and Peters is uncorroborated by any admissible evidence in the record. Defendant Dayton testified that no**

such assault and his incident report stated the same. (Ex. 4, Dep. of
Dayton); (Ex. 5, Dayton Incident Report of July 19, 2022.) Defendant
Peters' declaration at ECF No. 73-29 states he has never engaged in any
actions that would cause an inmate to feel threatened by him, nor has he
or anyone else before him ever physically or sexually assaulted Plaintiff.
(ECF No. 73-29, para. 8, 17-18); (Ex. 6, Peters Incident Report of July 19,
2022.)

Immaterial, because the statement does not relate to whether the
grievance procedures in place at Pontiac Correctional Center were
capable of use by Plaintiff, where Plaintiff admits she consistently used
the grievance procedure successfully for many complaints.

17.    On July 19, 2022, after being dragged down a hallway, Plaintiff was
then assaulted by Defendant Perez. *Id.*

RESPONSE: Objection. The cited material (ECF No. 73-11) consists of
Plaintiff's unverified, unsworn interrogatory responses, which are not
admissible under Federal Rule of Civil Procedure 56(c). The responses are
not sworn under penalty of perjury, not verified by Plaintiff, and not
otherwise authenticated. As such, they are inadmissible and lack
evidentiary foundation.

Subject to and without waiving these objections, the statement is disputed
and immaterial. Plaintiff has presented no admissible evidence that any
assault occurred on July 19, 2022, or that Defendant Perez engaged in the
alleged conduct, which Plaintiff does not describe aside from calling it
"assault." Defendants expressly denied these allegations in their Answer.
(See ECF No. 64 ¶¶ 21–22.) No incident report, medical record, or other
documentation supports Plaintiff's version of events. The allegation is also
immaterial to the issues presented on summary judgment, as Plaintiff does
not allege that Defendant Perez interfered with grievance access or took
any action relevant to the PLRA exhaustion analysis.

Disputed as to being "dragged down a hallway." (Exs. 5-6, Incident Reports
of July 19, 2022.)

18.    Shortly after the July 19, 2022 assault, Plaintiff reported the incident and requested medical attention as documented by Pontiac Crisis Team Member K. Petrovics on July 20, 2022, who wrote that Plaintiff "[r]eports needing medical treatment for head and legs following an incident with security staff yesterday." *Id.*; Ex. 6, IDOC001364, July 20, 2022 Evaluation.

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory answers and does not constitute admissible evidence for purposes of summary judgment under Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Joseph Murphy, and are not otherwise authenticated.**

**Subject to and without waiving this objection, disputed and immaterial. Disputed because the cited material reflects only that Plaintiff reported "needing medical attention following and [sic] incident," without identifying the nature of the injury, the medical need, or who denied care. Immaterial because it does not relate to the grievance process or show that Plaintiff was unable to access or use it.**

19.    Following the July 19, 2022 assault, Plaintiff repeatedly asked for grievance forms from Pontiac staff, but they refused to provide Plaintiff with a grievance form, would not give Plaintiff independent access to a grievance form, and threatened Plaintiff. Dkt. 73-11, at 5-9.

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and is not admissible under Rule 56(c). These statements are not sworn under penalty of perjury, not verified by Plaintiff, and lack authentication.**

**Subject to and without waiving these objections, disputed and immaterial. Plaintiff does not identify which staff allegedly refused to provide forms, when this occurred, or for how long. The record shows Plaintiff received and used at least 14 grievance forms during the relevant period. (Defs.' SOF ¶¶ 45–68; Exs. 12–26.) This directly contradicts any claim that "staff" generally did not provide any forms to Plaintiff.**

20.     On July 22, 2022, Plaintiff filed a grievance directly with the Administrative Review Board ("ARB") reporting that "I've attempted to write grievance I've wrote over 7 grievance and never received either a grievance number nor response I even had multiple staff refuse to even turn my grievance in. I am being discriminated against by medical & security staff & I fear for my safety, so I am sending this to Springfield to exhaust my administrative remedies at it's highest level being that no other level is being in compliance with protocol … I am being neglected out of hatred towards me and my kind, I fear they will allow me to die by trauma and injury … Please help…." Dkt. 73-16, IDOC000359-361, July 22, 2022 Grievance #1. Plaintiff further reported that she repeatedly asked for medical attention and was refused medical attention, including on July 19, 2022 when Plaintiff requested medical attention by Mental Health Provider ("MHP") Carman and she along with multiple mental health staff made incident reports and relayed Plaintiff's need for medical attention. *Id.*

**RESPONSE: Objection. Plaintiff fails to identify which staff allegedly refused to turn in grievances, when this occurred, or what specific grievances were involved.**

**Subject to and without waiving these objections, material but disputed in part. Disputed insofar as Plaintiff claims to have written "over 7" grievances without response; between June 10 and July 22, 2022, Plaintiff successfully submitted at least four grievances, all of which were documented and processed. (Defs.' SOF ¶¶ 45–48.) Otherwise undisputed.**

21.     On July 22, 2022, Plaintiff filed another grievance directly with the ARB reporting the events of July 19, 2022. Plaintiff again reported that Pontiac staff did not allow Plaintiff to submit her grievance and so sent the grievance directly "to Springfield to exhaust" her remedies and again expressed fear for her safety. Dkt. 73-17, IDOC000362-364, July 22, 2022 Grievance #2.

**<u>RESPONSE:</u> Objection. Plaintiff does not identify who allegedly blocked her from submitting a grievance or when such obstruction occurred.**

**Subject to this objection, disputed and immaterial. Disputed as to the truth of Plaintiff's allegations. The grievance reflects only her self-reported claims and does not establish that the grievance process was**

**unavailable. Plaintiff submitted at least seven grievances through institutional channels after July 22, 2022—including multiple concerning the same underlying events. (Defs.' SOF ¶¶ 57–68.) Otherwise undisputed.**

22.     On August 1, 2022, the ARB sent Plaintiff's two grievances from July 22, 2022 back to her for failure to submit her grievances through Pontiac staff, which, as Plaintiff had expressed, she could not do. Dkt. 73-16, IDOC000359-361; Dkt. 73-17, IDOC000362-364.

**RESPONSE: Disputed for the reasons stated above as to Plaintiff's ability to submit grievances, which Plaintiff admits she submitted at least 11 grievances at the facility level between June 10, 2022, through October 5, 2022. (Defs.' SOF ¶¶ 45-68.) Plaintiff's assertions do not demonstrate that the grievance process was unavailable or that she properly exhausted administrative remedies.**

23.     On July 23, 2022, Plaintiff was assaulted by Defendant Anderson. Pontiac staff continued to refuse to provide Plaintiff with grievance forms and refused to allow her to submit grievances. Dkt. 73-11 at 5-9, 13-14; Dkt. 73-1 at 13-14, Pl. Resp. to Requests for Admission.

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and is not admissible under Rule 56(c). These statements are not sworn under penalty of perjury, not verified by Plaintiff, and lack authentication.**

**Further, the cited pages of ECF No. 73-1 are Plaintiff's responses to Defendants' Requests for Admission, which do not support the asserted fact. None of the cited RFAs substantiate that Plaintiff was assaulted by Defendant Anderson on July 23, 2022, nor do they establish that staff "refused to provide Plaintiff with grievance forms" in connection with that alleged incident. In fact, Plaintiff admits she did not file a grievance regarding the alleged July 23 incident, and attributes that to "retaliation and interference" without offering any supporting evidence, nor any reason why the July 23 "incident" was not referenced in the two grievances Plaintiff sent directly to the ARB regarding Defendant Bailey.**

12

24.    On July 27, 2022, Plaintiff was sexually assaulted by Defendant Bailey while Defendant Attig stood by. Dkt. 73-11, at 5-9.

**RESPONSE: Objection. The cited material (Dkt. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence for purposes of summary judgment under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Subject to the objection, disputed and immaterial.**

**The statement is immaterial because it does not relate in any way to either the availability of grievance procedures Plaintiff could (and did in every other instance) use.**

**The statement is disputed because no such sexual assault ever occurred. (See Exhibit 7, Attig 49:5-53:1); (Ex. 3, Bailey 19:1-21:14.)**

25.    Plaintiff reported the sexual assault of July 27, 2022 immediately, including to the qualified MHP Megan Martin, who wrote on July 28, 2022, "Murphy alleges an incident of sexual misconduct by security staff. Murphy alleges that a male staff member searched and assaulted them." Dkt. 73-11, at 5-9; Ex. 7, IDOC001382, Martin Report.

**RESPONSE: Objection. The cited material (Dkt. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence for purposes of summary judgment under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**
**Subject to the objection, immaterial but disputed in part undisputed in part.**

13

**The statement is immaterial because it does not relate in any way to either the availability of grievance procedures Plaintiff could (and did in every other instance) use at Pontiac Correctional Center.**

**The statement is disputed in part as to Plaintiff "report[ing] the sexual assault." No sexual assault ever occurred, so there was no sexual assault to "report." (See Ex. 7, Attig 49:5-53:1); (Ex. 3, Bailey 19:1-21:14.)**

**The statement is undisputed in all other respects.**

26.    An inmate can report being sexually assaulted by Pontiac staff in several ways, including submitting a grievance or reporting it to medical or mental health staff. Ex. 1, Dep. Ruiz 64:4-15; Ex. 2, Dep. Dayton 78:22-79:18; Ex. 3, Dep. Attig 57:6-13; 58:10-23; Dkt. 73-5, IDOC000612-16. Grievances of sexual assault allegations do not need to be made on a grievance form once they are reported to Pontiac staff and a report is written the investigation begins immediately. *Id.*

**RESPONSE: Objection. The cited material confirms that inmates can verbally report sexual assault to staff, which may initiate a PREA investigation, but it does not establish that doing so alone satisfies the grievance process or constitutes proper exhaustion. Verbal reporting is one available avenue of relief, but exhaustion under the PLRA requires use of <u>all</u> available administrative remedies, including the grievance process, unless those remedies are truly unavailable.**

**Subject to the objection, material but disputed in part.**

**Undisputed that an inmate may report sexual assault through several avenues, including verbal reports to staff, and that such a report may trigger a PREA investigation without needing to be on a grievance form.**

**Disputed, however, to the extent this implies that the grievance process is unavailable or unnecessary for challenging, questioning, or seeking institutional review of alleged sexual misconduct. The cited materials do not support that assertion. IDOC policy makes clear that grievances concerning sexual abuse can and should be submitted to the grievance officer and are not subject to any filing deadline. (See IDOC Orientation**

14

Manual, IDOC000610, ECF No. 73-5 at 30.) Additionally, the grievance process remains a distinct and required channel for exhausting administrative remedies. (See Exhibit 8, Leslie Dep. 37:11–41:6) (IDOC 30(b)(6) designee).

27.     Plaintiff reported the sexual abuse to medical staff, Internal Affairs Officers, and Illinois State Police and went to the hospital where a rape kit was performed. Internal Affair initiated an investigation. Ex. 10, IDOC002448, Jan. 31, 2023 Illinois State Police Letter; Ex. 7, IDOC001382; Ex. 11, IDOC002469-73, July 29, 2022 Illinois State Police Field Report; Ex. 12, IDOC002486-2488, July 28, 2022 IDOC Investigational Interview.

**RESPONSE: Disputed in part and undisputed in part, and immaterial.**

**The statement is immaterial because it does not relate in any way to either the availability of grievance procedures Plaintiff could (and did in every other instance) use at Pontiac Correctional Center, and does not relate to any alleged intimidation or thwarting contemplated under *Ross v. Blake*, 578 U.S. __ (2016). It is further immaterial because the administrative remedies are intended under the PLRA to provide the prison an opportunity not just to *initiate* an investigation, but to *complete* one. Plaintiff did not afford that opportunity.**

**The statement is disputed because no such sexual assault ever occurred. (See Ex. 7, Attig 49:5-53:1); (Ex. 3, Bailey 19:1-21:14.)**

**The statement is undisputed in all other respects.**

28.     Pontiac staff continued to refuse to provide Plaintiff with a grievance form, or accept grievances. Dkt. 73-11, at 5-9. However, Plaintiff was able to obtain a grievance form from a fellow inmate, and to the best of Plaintiff's recollection, a different inmate mailed the grievance form to Springfield on Plaintiff's behalf, because staff at Pontiac prevented Plaintiff from submitting a grievance. *Id.* Plaintiff was scared for her safety and wellbeing, and because she was being denied access to grievance forms and an ability to securely submit them, she sent the grievance to Springfield as a matter of last resort. *Id.*

**RESPONSE**: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence for purposes of summary judgment under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.

Subject to the objection, material but disputed.

Staff did not refuse to provide grievance forms or to accept grievances, as Plaintiff admits she completed over 14 such forms. (Defs.' SOF ¶¶ 45-68.) Disputed as to it being a "matter of last resort," as Plaintiff had over 58 days remaining to explore other administrative remedies that were available.

29. Defendant Bailey was present in the proximity of Plaintiff following the July 27, 2022, assault, and refused to provide Plaintiff with access to grievance procedures, as well as by threatening and intimidating her. *Id.* He retaliated against Plaintiff by submitting a false and manufactured ticket against her. *Id.*

**RESPONSE**: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence for purposes of summary judgment under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.

Objecting further, the statement lacks foundation and specificity. It does not identify what is meant by "present in the proximity," what Defendant Bailey is alleged to have said or done that constituted "threatening and intimidating" conduct, or when such conduct allegedly occurred. It also fails to provide any facts showing how the issuance of a disciplinary report was false, or how it was causally linked to protected conduct. These are conclusory characterizations, not factual assertions supported by admissible evidence.

Subject to these objections, material, but disputed in part and undisputed in part.

Undisputed that Curtis Bailey issued a disciplinary report against Plaintiff.

Disputed as to Curtis Bailey being "present in the proximity of Plaintiff following the July 27, 2022, assault." Plaintiff did not experience any such assault. (See Ex. 7, Attig 49:5-53:1); (Ex. 3, Bailey 19:1-21:14.) Following Plaintiff's allegation, Bailey was removed from the North Cell House and did not work there after July 27, 2022. (Ex. 7, Attig 53:2-54:10); (Ex. 3, Bailey 24:24-27:12.)

Disputed as to the assertion that Defendant Bailey "refused" to provide Plaintiff with "access to grievance procedures" or "threaten[ed] and intimidat[ed] her." Plaintiff's admitted grievance history contradicts this. She filed at least nine separate grievances between August and September 2022, including multiple grievances addressing the July 27 allegations and other unrelated issues. (Defs.' SOF ¶¶ 49, 56–68; see also Exs. 18–26.) Plaintiff admitted these statements. (Pl.'s Resp. at 2 & 6, ECF No. 91.) These include a grievance improperly filed directly with the ARB on August 4, a grievance about Bailey and other staff on August 19, and additional grievances and litigation activity concerning medical care, religious practice, and other incidents. Plaintiff admits they were all received and responded to by prison officials. Plaintiff understood and actively used the grievance process at Pontiac Correctional Center.

Disputed as to the assertion that the disciplinary report by Bailey about Plaintiff was retaliatory, "false and manufactured." The opposite facts were admitted when Plaintiff failed to properly deny Defendant's Request for Admission Nos. 56-62, responding only that "counsel does not currently possess sufficient information to be able to admit or deny this request." Because Plaintiff did not state that she had made a reasonable inquiry or that the information could not be readily obtained, the matter is deemed admitted under Federal Rule of Civil Procedure 36(a)(3). Accordingly, Plaintiff admitted the truthfulness and legitimacy of the disciplinary

report. (Defs.' Ex. 1 ¶¶ 56-62, 65-67, ECF No. 73-1.) (See Disciplinary Materials re: July 28, 2022, Exhibit 9).

30.    Defendant Dayton also was around Plaintiff multiple times after the assaults. *Id.* He refused to provide Plaintiff with access to a grievance form and a locked grievance box, and retaliated against Plaintiff by submitting manufactured and false tickets against her. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Objecting further, the statement is vague, conclusory, and lacks foundation. It provides no details about when Defendant Dayton was allegedly "around Plaintiff," what he is claimed to have done, or how any of his conduct allegedly prevented access to the grievance system. The statement also fails to describe any specific grievance Dayton allegedly blocked, or any facts supporting the conclusion that a disciplinary ticket issued by Dayton was "false," "manufactured," or retaliatory. These are bare unsupported conclusions.**

**Subject to these objections, disputed in part and undisputed in part.**

**Disputed as to any suggestion Dayton issued or wrote a disciplinary ticket about Plaintiff. Thomas Dayton was assigned to South Mental Health Unit from June 2022 through October 2022. From July 19, 2022 (when Plaintiff was permanently moved from South Mental Health to North Cell House) through October 5, 2022 (when Murphy transferred out of Pontiac), Defendant Dayton did not work in North Mental Health. (Decl. of Dayton ¶ 31, ECF No. 73-10); (Exhibit 4, Dep. of Dayton 49:10-50:22.)**

**There is no corroborating documentation of any disciplinary ticket by Dayton against Plaintiff or having any interactions of any kind with Plaintiff in North Cell House.**

18

**Disputed as to the assertion that Defendant Dayton "refused to provide Plaintiff with access to a grievance form and a locked grievance box." Plaintiff's own grievance history contradicts this. Between August and September 2022, Plaintiff filed at least nine separate grievances—several of which expressly refer to the July 27 allegations and alleged retaliation. (Defs.' SOF ¶¶ 49, 56–68; Exs. 18–26.) Plaintiff admitted these facts. (Pl.'s Resp. at 2 & 6, ECF No. 91.) She submitted grievances to both the facility and the ARB, and each was addressed by prison officials. Plaintiff plainly understood how to access and use the grievance system, and did so regularly during the relevant period.**

31.     Staff and correctional officers at Pontiac retaliated against Plaintiff for grieving the assaults she experienced. *Id.* Correctional Officers, including Correctional Officer Williams and Major Bantista would stand by her cell and make threats by mimicking the moans and sounds of someone being beaten, and said things like "Oh he was crying like a little bitch after we maced him." *Id.* Plaintiff understood that they were trying to show Plaintiff they had harmed other people, and would harm her too if she spoke out. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Objecting further, the statement lacks specificity and foundation. Plaintiff does not identify when or where any of the alleged statements occurred, nor does she provide any admissible evidence connecting the alleged conduct to the grievance process. The statement is based entirely on Plaintiff's subjective "understanding," without any reference to overt acts by Officer Williams or Major Bantista that interfered with or inhibited her ability to file grievances.**
**Subject to these objections, disputed and immaterial.**

19

**The assertion is immaterial because, even if accepted as true, the allegation has no bearing on access to the grievance process. Plaintiff filed at least 11 grievances between June to September 2022, including several that expressly referenced the alleged July 27 incident and alleged staff misconduct. (Defs.' SOF ¶¶ 45-67; Exs. 12–26.) Plaintiff admitted these facts. (Pl.'s Resp. at 2 & 6, ECF No. 91.) Her conclusory belief that officers were "trying to show [they] would harm her too" does not establish any actual interference with grievance access, nor does it create a genuine dispute of material fact under Rule 56(a).**

**The assertion is disputed because neither Travis Bantista nor Christopher Williams testified to such conduct (Exhibit 1, Dep. of Williams); (Exhibit 11, Dep. of Bantista.)**

32.    Correctional Officer Williams, who was in charge of bringing Plaintiff's food and accompanied her any time she left her cell, said "Back in the day we used to do stuff to people's food like put glass and razors in their food." *Id.* An inmate several cells down from Plaintiff said that Correctional Officer Williams said "Back in the day it would have been a razor in this tray," in reference to Plaintiff's tray. *Id.* These are just examples of the intimidation that Plaintiff experienced to the best of her present recollection, which discouraged and intimidated her. *Id.*

<u>RESPONSE</u>: **Objection. The cited material (ECF No. 73-11) is Plaintiff's unverified, unsworn interrogatory response and inadmissible under Rule 56(c). It lacks foundation, specificity, and includes inadmissible hearsay ("an inmate several cells down from Plaintiff said …").**

**Subject to these objections, disputed and immaterial.**

**Subject to and without waiving these objections, disputed and immaterial. There is no admissible evidence that Officer Williams made such statements, or that any such statements interfered with Plaintiff's access to the grievance process. Plaintiff submitted at least 11 grievances from June through September 2022, including several about the July 27 incident and alleged staff misconduct, but only after initiating this lawsuit. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.) These facts were admitted. (Pl.'s**

Resp. at 2, 6, ECF No. 91.) Alleged threats, even if made, do not establish actual unavailability of the grievance process.

33.    Plaintiff reported this retaliation, including to qualified mental health practitioner Thomas Potoski on July 28, 2022, who wrote that Plaintiff "alleges that Sgt Bailey put his 'penis' in client Murphy's mouth nonconsensual. Client further alleges that Pontiac is 'retaliating against [her].' Client 'fears for [her] safety.' Client alleges this happened when 'placed in the holding tank.'" *Id.*; Ex. 8, IDOC002479-2482, Potoski Report.

<u>RESPONSE</u>: **Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Objecting further, Plaintiff mischaracterizes the cited exhibit (Ex. 8, IDOC002479–2482). The mental health progress note from Qualified Mental Health Professional Thomas Potoski, dated July 28, 2022, documents Plaintiff's self-reporting of prior allegations but does not validate, confirm, or substantiate them in any way, and is inadmissible hearsay. The note simply records that Plaintiff alleges Curtis Bailey engaged in non-consensual contact, that Plaintiff stated "Pontiac" is retaliating against her, and that she expressed subjective fear for her safety. The note does not mention anything other than "retaliating" without any specificity.**

**Subject to these objections, disputed and immaterial.**

**The statement is disputed because the record cited is not a finding or corroboration of retaliation or sexual assault. It is a clinical note reflecting Plaintiff's own subjective report to a mental health provider, recorded without investigation or verification. (Ex. 8, IDOC002479–2482.)**

**The statement is also immaterial. The note does not provide any evidence that Plaintiff was prevented from accessing the grievance process or that**

21

**any staff engaged in actual retaliatory conduct. Plaintiff's grievance history from June through September 2022 includes more than a dozen submissions, many referencing the July 27 allegations and other staff misconduct. All were received, documented, and addressed by IDOC staff. (Defs.' SOF ¶¶ 45–67; Exs. 12–26; Pl.'s Resp. at 2 & 6, ECF No. 91.)**

34.     During this time period, even when Plaintiff was able to obtain grievance forms from other inmates, Pontiac staff and correctional officers would not accept her grievances. Dkt. 73-11, at 5-9. Each night an officer wheeled a secured and locked grievance box through the halls, but would not accept grievances from Plaintiff, instead stating things like "no I am not letting you write shit up faggot." *Id.* This locked grievance box was never available to Plaintiff because the Correctional officers circulating the box did not allow her to place her grievances in the box. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Objecting further, the statement lacks specificity, personal knowledge, and evidentiary support. Plaintiff does not identify which staff or officers allegedly made these statements, on what dates the alleged conduct occurred, or who was present to witness it. The quoted language is inflammatory and uncorroborated. The statement is entirely unsupported by admissible evidence and appears to rest solely on Plaintiff's vague, retrospective account without reference to any documents, witnesses, or other materials.**

**Subject to these objections, material but disputed.**

**The statement is disputed because it is directly contradicted by the record. Plaintiff filed at least eleven grievances between June and September 2022, including grievances submitted both internally at Pontiac Correctional Center and directly to the Administrative Review Board.**

**(Defs.' SOF ¶¶ 45–67; Exs. 12–26.) These grievances addressed a wide range of issues, including the July 19 & 27 allegations, alleged staff retaliation, and other unrelated concerns. Each was logged, processed, and responded to by IDOC staff at Pontiac and the ARB. Plaintiff admitted these facts. (Pl.'s Resp. at 2 & 6, ECF No. 91.)**

**Despite claiming that she was prevented from accessing the grievance box, Plaintiff demonstrably used both standard and direct channels to submit grievances. There is no contemporaneous evidence that any grievance she attempted to submit was rejected or destroyed, nor has Plaintiff identified a single grievance she attempted to file but was unable to submit due to alleged officer interference.**

35.    Plaintiff was not able to use alternative drop off locations for grievances, because she was accompanied by a correctional officer at all times, and was afraid of what they might do to her if they confiscated a grievance, based on the threats from Major Bantista, Correctional Officer Williams, and others. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Objecting further, the statement is speculative, lacks foundation, and is not based on personal knowledge. Plaintiff offers no facts about when or where she allegedly encountered an "alternative drop-off location," or what specific opportunity she was denied by "others." The assertion is based entirely on subjective fear, without identifying any officer who actually threatened to confiscate a grievance or prevented her from dropping one off.**

**Subject to these objections, immaterial and disputed.**

**The statement is disputed because it is directly contradicted by the record. Plaintiff filed at least eleven grievances between June and September**

23

2022, including grievances submitted both internally at Pontiac Correctional Center and directly to the Administrative Review Board. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.) These grievances addressed a wide range of issues, including the July 19 & 27 allegations, alleged staff retaliation, and other unrelated concerns. Each was logged, processed, and responded to by IDOC staff at Pontiac and the ARB. Plaintiff admitted these facts. (Pl.'s Resp. at 2 & 6, ECF No. 91.) Plaintiff has not identified a single grievance that was confiscated or went unprocessed.

The statement is also immaterial because Plaintiff's subjective fear of potential, unspecified retaliation does not excuse her from using otherwise available grievance procedures, including submitting grievances directly to clinical counselors or even mental health staff. Even accepting Plaintiff's assertions as true, they do not create a genuine dispute of material fact as to the objective availability of the grievance process under Rule 56(a).

      36.    Plaintiff was also uncomfortable using these unsecured grievance boxes, because the contents were accessible and she was afraid that Correctional officers would read her grievance and inflict violence upon her. *Id.*

**RESPONSE**: Objection. The cited material (ECF No. 73-11) is Plaintiff's unverified, unsworn interrogatory response and inadmissible under Rule 56(c). It lacks foundation and specificity and includes no evidence of any grievance being read or intercepted.

Subject to and without waiving these objections, disputed and immaterial. Plaintiff submitted at least 11 grievances between June and September 2022, including several referencing the July 27 incident and alleged retaliation. (Defs.' SOF ¶¶ 45–67; Exs. 12–26; Pl.'s Resp. at 2, 6, ECF No. 91.) No grievance was rejected or lost due to alleged box insecurity, as the boxes were all locked and correctional, security staff could not access them. (See Ex. 8, Leslie Dep. 19:25–21:6; Ex. 1, Williams Dep. 99:4–17, 119:8–21.) Plaintiff's subjective anxiety does not render the grievance process unavailable.

37.    Plaintiff complained multiple times regarding these threats and retaliatory actions to a qualified MHP at Pontiac, who was the chairperson of Transgender affairs at Pontiac. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) is Plaintiff's unverified, unsworn interrogatory response and inadmissible under Rule 56(c). It lacks foundation, specificity, and authentication.**

**Subject to and without waiving these objections, disputed and immaterial. Plaintiff does not identify the mental health professional, the dates of any report, or what was actually said. There is no admissible evidence that any such complaint was treated as a formal grievance or forwarded through proper channels that would take advantage of all available processes. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.) Reporting vague concerns to a clinician, without more, does not satisfy or substitute for the grievance process.**

38.    A fellow inmate who went by the nickname of Kabaar Venson witnessed the threats and intimidation directed at Plaintiff. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and is not admissible under Rule 56(c). These responses lack verification, are not sworn under penalty of perjury, and are not otherwise authenticated.**

**Objecting further, the statement is vague and unsupported. Plaintiff does not identify what threats or intimidation Venson allegedly witnessed, when they occurred, or whether he was in a position to observe them. No declaration, affidavit, or testimony from Venson is submitted within the summary-judgment materials. Any recounting of Venson's observations is inadmissible hearsay.**

**Subject to these objections, disputed and immaterial. There is no admissible evidence showing that Venson observed any conduct that rendered the grievance process unavailable. Even assuming some conduct occurred, Plaintiff wrote and submitted (properly and improperly) 14 grievances during the relevant period, including on the issues she now raises. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.).**

39.     On August 4, 2022, Plaintiff sent a grievance directly to the ARB reporting the sexual assault of July 27, 2022 and the refusal of Pontiac Staff to accept Plaintiff's grievance. Dkt. 73-8, IDOC000350-352, Aug. 4, 2022 Grievance. Plaintiff wrote "Again I try to turn in grievance multiple times and was refused everytime by Staff telling me they won't help me grieve anything on the[ir] co-workers." *Id.*

**RESPONSE: Disputed in part and material. Disputed only as to Plaintiff "reporting the sexual assault" and refusal of "Pontiac Staff to accept Plaintiff's grievance." The statement is disputed because no such sexual assault ever occurred. (See Ex. 7, Attig 49:5-53:1); (Ex. 3, Bailey 19:1-21:14.) Plaintiff filed over a dozen grievances between June and September 2022, including multiple that referenced the July 27 incident and alleged retaliation. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.) Plaintiff admitted those facts. (Pl.'s Resp. at 2 & 6, ECF No. 91.)**

**The statement is otherwise undisputed.**

40.     Unable to access any relief through the grievance process due to obstruction and intimidation, Plaintiff filed the above captioned action on August 11, 2022. Dkt. 73-11, at 5-9.

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Federal Rule of Civil Procedure 56(c). These responses are not sworn under penalty of perjury, not verified by Plaintiff, and not otherwise authenticated. As such, they lack foundation and are not competent to establish any factual assertion in Plaintiff's favor.**

**Subject to these objections, disputed in part and immaterial. Plaintiff filed and completed at least fourteen grievances between June and September 2022, including multiple that specifically addressed the July 27 incident and alleged retaliation. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.) Each grievance was submitted, received, logged, and responded to by prison officials. Plaintiff's demonstrated ability to consistently obtain and complete**

26

grievances directly undermines any suggestion of systemic obstruction or unavailability by vague notions of "intimidation." Undisputed that on August 11, 2022, Plaintiff commenced this action by filing a complaint she signed on August 9, 2022 (Resp. to Req. to Admit, ECF No. 73-1 ¶ 68) and a motion to proceed *in forma pauperis* she signed on July 13, 2022 (ECF No. 2 at 2.)

Further, Plaintiff had until September 25, 2022 (60 days after July 27) to file a grievance or to use available administrative remedies she admits to existing, before filing suit 7 days later. After August 4, Plaintiff had 45 days left to access relief through the grievance process to completion.

41.     In response to her August 4, 2022 grievance plea for help, the ARB responded on August 18, 2022, stating that it "will make the warden and IA aware of allegations", but sent Plaintiff's grievance back to her for failure to submit her grievance through Pontiac staff, despite her reporting that Pontiac staff prevented her from doing so. Dkt. 73-18, IDOC000350-352.

**RESPONSE: Admitted but immaterial. The ARB's response dated August 18, 2022, has no bearing on the availability of the grievance process as of August 11, 2022, when Plaintiff filed suit. Plaintiff did not even wait for the ARB's reply before commencing litigation, and the record reflects she was actively using the grievance system both before and after this submission. (Defs.' SOF ¶¶ 45–67; Exs. 12–26.)**

42.     Plaintiff reported her feelings of being unsafe to multiple health practitioners. On August 5, 2022, she reported "not feeling safe" in the North Cell House. Dkt. 73-11, at 5-9; Ex. 9, IDOC001407-1408, Michaels Report.

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and is not admissible evidence under Rule 56(c). These responses are not verified, sworn under penalty of perjury, or otherwise authenticated.**

**Subject to this objection, disputed in part and immaterial. Exhibit 9 of Plaintiff's materials does not reference the grievance process or suggest any inability to access it. Plaintiff's subjective report of feeling unsafe,**

**without more, does not support that the grievance system was unavailable or obstructed. Otherwise undisputed.**

43.    For the first time, on August 19, 2022, Plaintiff was able to submit a grievance at Pontiac concerning the sexual assault of July 27, 2022. Dkt. 73-21, IDOC000033-36. She also reported the retaliation she suffered for reporting the sexual assault. *Id.* The Chief Administrative Officer responded that her grievance was moot since there was already an ongoing PREA investigation into the sexual assault reported. *Id.*

<u>RESPONSE</u>**: Material and disputed in part. Undisputed that Plaintiff submitted a grievance at the facility level on August 19, 2022, regarding the alleged July 27, 2022, sexual assault.**

**Disputed to the extent it implies this was the first time Plaintiff *could* file a grievance through proper channels—i.e., submitting a grievance to the grievance office of Pontiac Correctional Center. Plaintiff properly submitted other grievances on August 9 and 10, 2022. (Pl.'s Resp. to Defs.' SOF ¶¶ 59–60; ECF Nos. 19–20.)**

44.    Plaintiff was also able to submit a grievance on September 2, 2022 reporting the events of July 19, 2022 and July 27, 2022. Dkt. 73-11, at 5-9; Dkt. 73-24, IDOC000013-14. Plaintiff reported that "I am forced to be taken to showers by male C/Os who sexual[l]y harass and assaults me and even when I put in PREAs IA takes weeks to talk to me and the very C/O who assaulted me is always left around me to now with motivation – continue to assault and neglect me." *Id.*

<u>RESPONSE</u>**: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and does not constitute admissible evidence under Rule 56(c). These responses are not verified, sworn under penalty of perjury, or otherwise authenticated.**

**Subject to the objection, undisputed that Plaintiff wrote the quoted language in the September 2, 2022 grievance, but disputed as to the truth of the statements or their foundation. The grievance contains vague and conclusory allegations unsupported by specific statements.**

28

**The statement is also immaterial. The grievance was submitted after the lawsuit was filed on August 11, 2022, and does not relate to the availability of the grievance process during the relevant time period or to the claims at issue in this case.**

45.     On October 19, 2022, Plaintiff's September 2, 2022 grievance was designated as "MOOT" by the Menard Correctional Center ("Menard"), despite the grievance having been filed at Pontiac, and the incidents giving rise to the grievance having occurred at Pontiac. Dkt. 73-11, at 5-9; Dkt. 44-2, at 1, Response to Sept. 2, 2022 Grievance. Plaintiff does not recall receiving this notification while at Menard. *Id.*

**RESPONSE: Objection. The cited material (ECF No. 73-11) consists of Plaintiff's unverified, unsworn interrogatory responses and is not admissible under Rule 56(c). These responses are not verified, sworn under penalty of perjury, or otherwise authenticated.**

**Subject to and without waiving this objection, undisputed but immaterial. The September 2 grievance was submitted after Plaintiff signed the complaint on August 9 and filed suit on August 11, 2022. A grievance filed after initiating litigation cannot serve to exhaust administrative remedies that must be completed prior to filing.**

**[*Argument section follows*]**

29

## Argument

**I.    Administrative remedies were objectively available and capable of use, but Plaintiff did not exhaust them.**

Defendants carried their burden of showing the availability of remedies capable of use; Plaintiff, thus, carries the burden of establishing with competent evidence that those remedies were not usable due to intimidation or threat of some kind. Plaintiff has failed to do so, and also failed to use the available alternatives that would have taken such threats and intimidation into account—assuming they are true.

### A.  Plaintiff's admissions show objective availability.

Plaintiff admits that she used the grievance process properly at least 11 times during her time at Pontiac Correctional Center, from June 2022 through October 5, 2022. (Pl.'s Resp. at 2, 6) (admitting Defendants' SOF ¶¶ 45-67. ) The attached table at Exhibit 12 demonstrates a chronology of Plaintiff's access to grievance forms, paper, litigation materials, and other resources from June 8 (the date Plaintiff was transferred to Pontiac) through October 5 (the date Plaintiff transferred to Menard).

One evidentiary point bears direct mention. On page 19 of her response, Plaintiff asserts that Correctional Officer Christopher Williams "refused to allow Plaintiff to submit grievances and threatened Plaintiff for filing grievances and reporting Pontiac staff misconduct." She cites pages 17–18 and 36 of his deposition as support. But those pages contain no such testimony. On the contrary, Williams

describes only routine responsibilities—escorting inmates, delivering mail, and wheeling a mobile grievance box through the galleries—and affirms that he had no knowledge of what grievances Plaintiff submitted. (See Williams Dep. at 17–18, 36.) He does not admit to any interference with the grievance process, let alone threats.

### B. Plaintiff admits ability to submit grievances to multiple different staff members, not just security staff.

Plaintiff now claims that correctional staff intimidation prevented her from grieving the July 19, 23, and 27 allegations. But that claim is directly contradicted by her own admissions and conduct. She not only had access to grievance forms, she submitted them to the ARB herself, undermining any suggestion that forms were unavailable or that institutional mail could not be used to send grievances to the appropriate office or counselor. More importantly, she admits that when an incarcerated person fears retaliation from cellhouse staff, they can (1) use fixed grievance boxes; (2) ask mental health staff for assistance; (3) write directly to the grievance office; or (4) submit the grievance during weekly counselor rounds. (Pl.'s Resp. at 2, admitting Defs.' SOF ¶ 29.) Plaintiff used none of these avenues for the allegations now at issue—despite using the grievance system repeatedly during the same time period for unrelated complaints. That selective inaction reflects a personal choice, not an external barrier, and does not satisfy the PLRA's requirement to exhaust *all available* administrative remedies.

Plaintiff cites *Kaba v. Stepp*, 458 F.3d 678 (7th Cir. 2006), arguing that the ability to file some grievances does not prove she could file others. But *Kaba* does

31

not support that broad or decontextualized proposition. In *Kaba*, the court found a factual dispute about whether a single officer's pattern of threats rendered the grievance process unavailable where the plaintiff was *entirely* dependent on that officer to access it. Here, Plaintiff makes no comparable assertions, nor could she. She not only had access to the grievance process, she used it both before and after the relevant events. In fact, in the days immediately preceding her August 11 lawsuit, she submitted grievances on August 9 and 10 raising serious constitutional issues, including retaliation for reporting staff sexual abuse. (Defs.' SOF ¶¶ 59–60.)

### C. Plaintiff does not genuinely dispute availability.

Plaintiff's statement of additional facts is largely grounded in a single document Plaintiff contends creates a genuine dispute about the availability of administrative remedies—answers to Defendant Sean Brown's interrogatories where she purports to articulate intimidation, threats, and harassment by security staff. However, those answers are not admissible and must be struck and disregarded because they are unsworn, unsigned, and not under penalty of perjury. Paragraphs 17-19, 23-25, 28-38, 40, 42, and 44-45 of Plaintiff's statement of additional facts are not supported by competent evidence and must be put aside. *Barker v. Quick Test, Inc.*, No. 13 C 4369, 2016 U.S. Dist. LEXIS 32755, at *5 (N.D. Ill. Mar. 15, 2016) ("The answers therefore do not satisfy § 1746 and cannot be deployed on summary judgment.")

Even assuming some *facility-level* remedies were compromised by security-staff, Plaintiff still failed to use other available options before filing suit. As noted

32

above, Plaintiff filed two grievances on July 22 directly with the ARB. When the ARB returned her July 22 grievances with instructions to first obtain responses from the grievance officer and warden, she did not seek help from any trusted staff to comply with those requirements, despite admitting (as noted above) that those avenues existed. She did not contact a counselor, a clinician, or a mental health provider to report that she was unable to proceed through the required steps. She simply stopped trying.

Plaintiff claims that she could not complete the grievance process because staff "refused" to provide her with forms. The mere fact that forms were temporarily unavailable to Plaintiff is insufficient to establish exhaustion. *Dean v. Prison Health Servs.*, Civil Action No. 10-14135, 2011 U.S. Dist. LEXIS 46268, at *25-27 (E.D. Mich. Mar. 28, 2011) (collecting cases).

Even if Illinois prisons allow inmates to verbally report sexual assault to any staff member, that does not meet the PLRA's requirement to exhaust *all* available administrative remedies. 42 U.S.C. § 1997e(a) ("such administrative remedies as are available are exhausted"). To "exhaust" means to fully complete every step of the process the prison officially provides, including filing a written grievance and appealing any denial. *See* Stephen Michael Sheppard, *Exhaustion (Exhaust)*, THE WOLTERS KLUWER BOUVIER LAW DICTIONARY DESK EDITION (2012) ("To be emptied, completed, expelled, or worn out.") Verbal reporting under PREA may trigger an internal response, but it does not *exhaust* the *available* grievance process, which remains there for use.

33

II.    **A *Pavey* hearing is not warranted, but to the extent a *Pavey* hearing is needed, it should be limited to only genuinely undisputed, material fact, such as the credibility of Plaintiff's claims of intimidation.**

A *Pavey* hearing is unnecessary and unwarranted because Plaintiff has forfeited the opportunity to present sworn testimony about her "intimidation" and "retaliatory threats." She has offered no sworn testimony on that issue. Her opposition relies solely on unsworn, unverified interrogatory responses.

Under Rule 56, a non-movant must present admissible evidence—such as sworn declarations or testimony—to establish a genuine dispute of material fact. Plaintiff did not do so. She should not now be allowed to generate new sworn testimony to avoid summary judgment after the deadline for presenting evidence has passed. Courts routinely reject such tactics. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'") (quoting *Employers Ins. of Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 846 F. Supp. 677, 685 (N.D. Ill. 1994)).

Even so, the only possible factual dispute is whether her alleged fear of retaliation was so severe and pervasive that it rendered all available administrative channels (which she admits existed) unusable. That is a narrow credibility issue, and it does not warrant a broad evidentiary hearing. A full *Pavey* hearing is unnecessary when the record already forecloses exhaustion as a legal matter, apart from that limited and fact-specific question. Accordingly, for purposes of any *Pavey*

34

hearing, undisputed facts identified by both Parties' papers should be presumed true for purposes of the briefing, particularly Defendants' statement of fact paragraphs 1-5, 9-12, 14, 17-19, 21, 24, 25, 29, 30-32, 35-68.

Date: June 12, 2025

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By:     */Daniel N. Robbin/*
Daniel Noah Robbin
Bar No. 6321386
Assistant Unit Supervisor, Prisoner Litigation
Government Representation Division
Office of the Attorney General
115 S. La Salle St.
Chicago, Illinois 60603
(312) 814-7199
daniel.robbin@ilag.gov