**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

JOSEPH MURPHY,
    Plaintiff,

v.

CURTIS BAILEY, *et al.*,
    Defendants.

Case No. 1:22-cv-01266-JEH-RLH

**Order**

Now before the Court is Defendants' motion for summary judgment based upon Plaintiff Andreya Montrise's[1] alleged failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).[2] For the reasons stated *infra*, the Court finds that genuine disputed facts exist on exhaustion that require resolution by a fact-finder. Prior to the Supreme Court's recent decision in *Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793 (2025), that fact-finder would be the judge, not a jury. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008), and *abrogated by Perttu v. Richards*, 605 U.S. 460 (2025). However, the Supreme Court held in *Perttu* "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Perttu*, 145 S. Ct. at 1807. Accordingly, this Court must also determine whether the exhaustion issue in this case is intertwined with the merits

---

[1] Per the Amended Complaint, Plaintiff's name is Andreya Montrise, and she is a transgender woman who uses she/her pronouns, although she is known to the Illinois Department of Corrections as Joseph Murphy, which is also the name used in this case's caption. (D. 61 at ECF p. 1 & 3).
[2] Citations to the electronic docket are abbreviated as "(D. ___ at ECF p. ___)."

1

of Montrise's claims. As explained below, the Court finds that the exhaustion issue and the merits are intertwined, thus necessitating a jury trial on the affirmative defense of failure to exhaust administrative remedies.

## I

## A

The Amended Complaint (Complaint) outlines a series of alleged incidents occurring on July 19, July 23, and July 27, 2022, which form the basis of the claims against the Defendants.

At the time of the events set forth in the Complaint, Plaintiff was a transgender female inmate at the all-male Illinois Department of Corrections facility (IDOC), Pontiac Correctional Center (Pontiac). On July 19, 2022, Plaintiff was transferred from South Mental Health by Defendant Officer Peters and Defendant Lieutenant Dayton. During this transfer, Peters allegedly squeezed Plaintiff's wrist cuffs tightly, causing pain, and both Peters and Dayton ignored Plaintiff's distress. Plaintiff was cuffed behind the back and at the ankles, and Dayton pushed Plaintiff forward, causing a fall onto the face. Peters then placed his knee on Plaintiff's back, causing further pain, and both officers dragged Plaintiff through the prison, periodically slamming Plaintiff down, resulting in injuries to the wrist, ankle, lower calves, shoulders, and back. Despite Plaintiff's cries for help, multiple staff members, including Defendant Lieutenant Pratt and Defendant Correctional Officer Brown, observed the incident but did not intervene. Plaintiff was subsequently dragged into North Cell House 1 Gallery Holding Tank 2, where Defendant Sergeant Ivan Perez allegedly slammed Plaintiff's head into the floor and denied medical attention.

On July 23, 2022, Defendant Correctional Officer Anderson escorted Plaintiff under the pretense of a healthcare visit. Anderson, who had previously attempted to engage Plaintiff in sexual activity, questioned Plaintiff about reporting the July

19 incident and a prior Prison Rape Elimination Act claim against him. Anderson then diverted Plaintiff back to the cell instead of healthcare and later, in the cell door, allegedly grabbed and squeezed Plaintiff's breast for his own sexual gratification.

Finally, on July 27, 2022, Plaintiff, feeling mentally unstable and held in an inoperative cell, requested a crisis team. Plaintiff was placed in Holding Tank 01, where Nurse Kendra conducted a mental health assessment. Despite Plaintiff not claiming to be suicidal or homicidal, Sergeant Bailey allegedly forced Plaintiff onto crisis watch. Bailey, along with Sergeant Attig, later approached Plaintiff, and Bailey allegedly forced Plaintiff to perform oral sex while Attig did not intervene. Plaintiff was then placed on crisis watch, leading to suicidal thoughts due to the assault. Plaintiff reported the sexual abuse, leading to an investigation involving Nurse Kendra, Internal Affairs Officers, and the Illinois State Police.

Based upon these facts, Count 1 of the Complaint alleges the use of excessive force by various Defendants on all three dates, pursuant to 28 U.S.C. § 1983; Count 2 of the Complaint alleges a failure to intervene by some Defendants to prevent the excessive use of force by other Defendants on July 19 and 27, 2022; and Count 3 alleges a failure of some Defendants to provide medical care to Plaintiff for injuries sustained on July 19, 2022. (D. 61).

The Complaint also contains allegations related to Plaintiff's efforts to avail herself of Pontiac's administrative remedies with respect to the events on the three dates in question, although none of the Complaint's counts assert a specific claim related to the grievance process, such as a retaliation or First Amendment claim. Specifically, the Complaint alleges that immediately after the alleged July 27, 2022, sexual assault, Plaintiff reported the assault to Mental Health Professional Martin and the female warden. After being taken to the hospital where a rape kit was administered, she spoke two days later to local police detectives and Pontiac

Internal Affairs Head of Investigations.  She also filed a formal grievance on August 4, 2022, by filling out an IDOC Offender's Grievance form to again report the sexual assault and abuses by Defendants Bailey and Attig on July 27, 2022, specifically identifying the perpetrators and the details of the incident. Immediately after the incident and prior to August 4, 2022, however, Plaintiff encountered significant interference in accessing grievance procedures, as staff at Pontiac consistently refused to accept her grievances related to the events of July 27, 2022, telling her they would not assist in filing complaints against their colleagues.  In response to these obstructions, Plaintiff submitted her grievance directly to the Administrative Review Board (ARB) in Springfield, explaining that this was her only available remedy.  On September 2, 2022, Plaintiff submitted a second grievance regarding the July 19, 2022, assault, again facing challenges in documenting staff misconduct and neglect related to that incident prior to September 2, 2022.

**B**

After Defendants asserted as an affirmative defense in their Answers that Plaintiff failed to exhaust her administrative remedies (D. 64 at ECF p. 15), Defendants then filed a motion for summary judgment on the issue of exhaustion. They argue that Plaintiff failed to exhaust administrative remedies as required by the PLRA before filing this lawsuit. They assert that the grievance process at Pontiac was readily available to Plaintiff, as evidenced by her frequent and successful use of the process both before and after the alleged incidents.  Despite this, Plaintiff did not exhaust her administrative remedies for the allegations dated July 19, July 23, and July 27, 2022, before proceeding to court.

Defendants contend that Plaintiff's assertion of the unavailability of administrative remedies is contradicted by her own actions. They argue that the Plaintiff's subjective beliefs about the grievance system do not excuse her failure

to exhaust under the PLRA, especially given her demonstrated ability to file numerous grievances during the relevant period. Defendants emphasize that the grievance process at Pontiac is comprehensive and accessible, with multiple safeguards in place to prevent interference or intimidation by staff.

Furthermore, Defendants highlight that Plaintiff improperly filed grievances directly with the ARB instead of following the prescribed grievance procedure at Pontiac. This improper filing does not constitute proper exhaustion as required by the PLRA. Defendants also note that Plaintiff failed to file any grievance regarding the alleged incident on July 23, 2022, which is a clear violation of the PLRA's exhaustion requirement.

Plaintiff opposes Defendants' motion for summary judgment on the grounds that administrative remedies were not "available" to her, as required by the PLRA, due to staff obstruction, intimidation, and retaliation at Pontiac. She contends that after the assaults which form the basis of her Complaint, Pontiac staff refused to provide her grievance forms, prevented her from submitting grievances, and threatened and intimidated her to discourage the filing of complaints, thereby making the grievance process inaccessible. These actions include explicit refusals to accept her grievances and derogatory comments when she tried to submit them, such as "no I am not letting you write shit up faggot."

Plaintiff asserts that she made multiple efforts to comply with the grievance procedures, including requesting forms and trying to submit grievances both through staff and by mailing directly to the ARB when staff interference blocked other avenues. In July 2022, after staff refused her grievances, she sent two directly to the ARB, explaining that Pontiac staff would not process her grievances and expressing concern for her safety, but the ARB returned them for not being processed within the institution, despite her expressed inability to do so due to

staff obstruction. She eventually filed this lawsuit after being unable to access relief through the regular grievance process.

Plaintiff further argues that intimidation and retaliation by staff—including threats to her safety, explicit statements about contaminating her food, and standing by her cell mimicking the sounds of beatings—deterred her from attempting to file further grievances. Multiple correctional officers, including those responsible for delivering food and the grievance box, not only refused to collect her grievances but also made threats and submitted false disciplinary tickets against her, further chilling her ability to seek redress. Plaintiff states she reported incidents and retaliation to mental health practitioners, but this did not restore her access to the grievance process.

With respect to her sexual assault claims, Plaintiff contends that the grievance process should be deemed exhausted under the Prison Rape Elimination Act (PREA), as prison policy and depositions confirm that inmates can report sexual assault to staff, medical or mental health providers, or the ARB, and that such reporting initiates an investigation even if a formal grievance is not filed. Plaintiff asserts she reported her sexual assault promptly to a mental health provider, medical staff, Internal Affairs, and Illinois State Police, and thus satisfied any applicable exhaustion requirements for those claims.

Finally, Plaintiff maintains that even if she later filed other grievances regarding unrelated incidents, her ability to do so does not defeat the claim that the grievance process was made unavailable as to the assaults at issue, because unavailability is not an "either-or" proposition—sometimes remedies are available and sometimes not, depending on staff conduct and the nature of each grievance. She further contends that there are disputed material facts regarding the availability of remedies, particularly since Defendants did not depose her, and therefore summary judgment is inappropriate. At a minimum, Plaintiff argues that

6

a *Pavey* hearing is necessary to resolve factual disputes concerning exhaustion, as both sides acknowledge the existence of genuine disputes that are material to the outcome. For these reasons, in Plaintiff's memorandum in opposition to the motion for summary judgment, she requests denial of the motion or, alternatively, a *Pavey* hearing to resolve the factual issues regarding exhaustion and the availability of administrative remedies.

## C

After the parties completed briefing on the motion for summary judgment, the Supreme Court decided *Perttu*, prompting Plaintiff to file a Notice of Supplemental Authority. Plaintiff argues in this filing that the Supreme Court's decision in *Perttu* holds that parties have a right to a jury trial on PLRA exhaustion issues when those issues are intertwined with the merits of the underlying claims, thereby overruling the prior Seventh Circuit practice allowing judges to resolve such disputes through bench trials. Plaintiff asserts that, as in *Perttu*, there are genuine factual disputes here about whether administrative remedies were effectively unavailable due to prison staff's interference, and thus under *Perttu*, these issues must go to a jury rather than be resolved on summary judgment or by the court alone.

In their Response to Supplemental Authority, Defendants oppose further briefing or argument, arguing that *Perttu*'s holding is limited and that the current record is sufficient for the Court to assess its relevance without additional proceedings, maintaining that no jury trial is warranted in this case.

In Reply, Plaintiff counters by emphasizing that Defendants concede *Perttu* abrogated prior circuit law but incorrectly contend that the exhaustion dispute here is not intertwined with the merits. Plaintiff asserts that *Perttu*'s jury requirement is not limited to First Amendment claims or to instances of actual estoppel, but applies whenever factual disputes regarding PLRA exhaustion

overlap with the underlying merits, as is the case where both the exhaustion issue and Plaintiff's Eighth Amendment claims hinge on whether Defendants interfered with access to the grievance process through refusal, intimidation, or retaliation, and thus, a jury must resolve these disputes at trial.

Although the Court did not order additional briefing based on the decision in *Perttu*, it did conduct oral argument on the motion for summary judgment, which included extensive argument on the applicability of *Perttu* to the present case. After that argument, the Court took the matter under advisement.

## II

### A

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "A remedy becomes unavailable 'if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

When considering a motion for summary judgment in the context of PLRA exhaustion, the general standard set forth in Federal Rule of Civil Procedure 56(a) controls: "Summary judgment on a claim or defense is proper if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024) (quoting FED. R. CIV. P. 56(a)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jones*, 124 F.4th at 467 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"To succeed on a motion for summary judgment based on an affirmative defense, the defendant 'must lay out the elements of the [defense], cite the facts which [the defendant] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the [plaintiff] on the [defense].'" *Jones*, 124 F.4th at 467 (quoting *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)). In the Rule 56 exhaustion context, "a defendant prison official must demonstrate that the plaintiff prisoner failed to exhaust the applicable grievance procedures and that those procedures were available to him as a matter of law." *Jones*, 124 F.4th at 467 (citing *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) and *Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022)).

Typically, if a genuine dispute as to any material fact exists on the record as it relates to a claim or defense, summary judgment must be denied, and the issue is decided by a jury. *See Jones*, 124 F.4th at 463. Oddly, however, thanks to the Seventh Circuit's decision in *Pavey*, that is not so for summary judgment motions for PLRA exhaustion. The Seventh Circuit held in *Pavey* that "[b]ecause exhaustion is an issue of judicial administration, a court may resolve factual issues related to exhaustion without the participation of a jury." *Jones*, 124 F.4th at 469 (citing *Pavey*, 544 F.3d at 741–42) (other cases cited omitted). Thus, "where a material factual dispute exists, a district court can only resolve an exhaustion dispute after an evidentiary hearing." *Jones*, 124 F.4th at 469. *See also Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("If ... a prisoner raises 'sufficient factual allegations demonstrating a genuine dispute as to whether the administrative remedies were available to him,' a court must conduct an evidentiary hearing pursuant to *Pavey* ... to resolve the dispute.") (quoting *Smallwood,* 59 F.4th at 318 (7th Cir. 2023)); *Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015) ("Often exhaustion (or its lack) will be apparent, but when it is not, the district court must hold an evidentiary

hearing to resolve the question."); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] judge can resolve an issue of exhaustion, like other threshold issues (such as jurisdiction), himself, in order to avoid multiple trials in the same case. But he can do that only after conducting an evidentiary hearing."); *see also* § 2416 Evidence on Motions, 9A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2416 (3d ed.) (when questions of fact or credibility predominate, a court's decision not to hear oral testimony on a motion is often an abuse of discretion).

Inotherwords, because of *Pavey*, the procedure related to PLRA exhaustion is entirely different than the procedure in the ordinary summary judgment context: If a genuine dispute exists on a material exhaustion issue, then instead of just denying the motion for summary judgment and proceeding to trial, district judges are required by *Pavey* to actually resolve the factual dispute themselves after an evidentiary hearing. Only after the judge *resolves* the material factual dispute is a decision made about whether the case is dismissed for failure to exhaust administrative remedies or will proceed to a jury trial on the merits.

**B**

The PLRA says nothing about whether a judge or jury should decide factual disputes about exhaustion or when that decision should happen. However, in *Pavey*, Judge Richard Posner, writing for a panel of the Seventh Circuit, framed the question presented to it in that case as "whether a prisoner plaintiff in a suit for damages governed by the Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issue relating to the defense of failure to exhaust administrative remedies." The court answered, "No." Then, after having decided the question presented, the court went on at length in *dicta*[3]

---

[3] The Seventh Circuit, in another opinion authored by Judge Posner, provides the following definition of dictum: "A dictum is 'any statement made by a court for use in argument, illustration, analogy or

to craft a very detailed, novel process "to be followed" when factual disputes arise in the context of exhaustion:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies. We emphasize that in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved. But we do not want to place the district courts of this circuit in a straitjacket.

---

suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication.' *Stover v. Stover*, 60 Md. App. 470, 476 (1984). It is 'a statement not addressed to the question before the court or necessary for its decision. *Am. Fam. Mut. Ins. Co. v. Shannon*, 120 Wis. 2d 560, 565 (1984)." *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988). One could delete the block quote from *Pavey* set forth here without in any way undermining the opinion on the question actually presented to that court precisely because it is so obviously *dicta*.

*Pavey*, 544 F.3d at 742. Although the Seventh Circuit neglected to provide any citations to authority—case, statute, rule, regulation, or otherwise—to assist the district courts in this Circuit with understanding the legal underpinnings for these "procedures" set forth in its *dicta*, it did at least explain why it was rejecting the plaintiff's claim that the Seventh Amendment entitled him to a jury trial on factual disputes related to exhaustion—the question actually before the court.

In that regard, the court stated that "not every factual issue that arises in the course of a litigation is triable to a jury as a matter of right, even if it is a suit at law (rather than in equity) within the meaning of the Seventh Amendment." *Pavey*, 544 F.3d at 741. The court then listed examples of factual issues resolved by a judge and not a jury: 1) questions regarding subject-matter jurisdiction; 2) questions relating to the defense of lack of personal jurisdiction or venue; and 3) questions related to a decision to relinquish supplemental jurisdiction to a state court. *Id.* According to the court, "The generalization that emerges from these examples and others might be given [none are], is that juries do not decide what forum a dispute is to be resolved in. Juries decide cases, not issues of judicial traffic control." *Id.*

In *Perttu*, the Supreme Court rejected *Pavey*'s holding, at least in the context of when the question of whether a prisoner has exhausted her administrative remedies is intertwined with the merits of the prisoner's lawsuit. Similar to the Plaintiff in the present case, the prisoners in *Perttu* alleged sexual abuse by correctional officers and prevention of their ability to avail themselves of the grievance process through threats and retaliation by correctional officers. *Perttu*, 145 S. Ct. at 1799. Dissimilar to the case at bar, the prisoners in *Perttu* alleged a First Amendment retaliation claim—something the Plaintiff in this case did not do.

On the exhaustion issue, the trial court in *Perttu* followed the Sixth Circuit's equivalent of the *Pavey* procedures, conducting a bench trial and dismissing the

12

case for failure to exhaust administrative remedies thereafter. The Sixth Circuit on appeal reversed and held that "'the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case.'" *Perttu*, 145 S. Ct. at 1799 (quoting *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir.), *cert. granted,* 145 S. Ct. 119 (2024), *aff'd,* 605 U.S. 460 (2025)). Noting the conflict between the Sixth Circuit decision and the Seventh Circuit's decision in *Pavey¸* the Supreme Court granted *certiorari* to resolve the circuit split. *Id.*

The prisoners in *Perttu* made two arguments to the Court: 1) there exists a jury trial right when the question of exhaustion is intertwined with questions on the merits; and 2) the Seventh Amendment requires a jury trial for *all* factual disputes related to PLRA exhaustion. *Id.* at 1800. The Court decided the case on the former issue, expressing "no view" on whether *all* factual exhaustion questions must be submitted to a jury trial.

The Supreme Court first noted the importance of the Seventh Amendment jury trial right stating, "'The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Perttu*, 145 S. Ct. at 1800 (quoting *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 121 (2024) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935))). Performing that scrutiny, the Court recognized the "settled premise" that "PLRA exhaustion is a standard affirmative defense." *Id.* at 1801. Exhaustion is "not jurisdictional"[4] and not "a pleading requirement", but instead exhaustion is an "'affirmative defense' subject to 'the usual practice under the Federal Rules'",

---

[4] In *Pavey*, the Seventh Circuit equated exhaustion with three "jurisdictional" issues: subject matter, personal jurisdiction, and supplemental jurisdiction, a mistake which the Supreme Court impliedly points out here. *See Pavey*, 544 F.3d at 741.

13

especially given the PLRA's silence on the question before the Court. *Perttu*, 145 S. Ct. at 1801 (quoting *Jones v. Bock*, 549 U.S. 199, 212 (2007)).

Regarding that "usual practice," the Court noted its previous holdings that in cases of "intertwinement, district courts should structure their order of operations to preserve the jury trial right." *Id.* at 1802. For example, judges may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury. *Id. (*citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–511 (1959)). This principle "should be read 'expansively,' applying to any claim triable by a jury even 'in a suit which the basic relief sought is equitable.'" *Id.* (quoting § 2302.1 Judicial Construction of the Jury Trial Guarantee, 9 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2302.1 (4th ed.)).[5] In the context of subject matter jurisdiction, although "judges may resolve factual disputes in the course of determining whether subject matter jurisdiction is proper", the Court has "long held that a court may not do so when the factual disputes are intertwined with the merits." *Perttu*, 145 S. Ct. at 1803 (citing *Wetmore v. Rymer*, 169 U.S. 115, 120–121 (1898)).[6] Finally, the Court noted that at the time of the PLRA's enactment, "many lower court decisions and treatises had extended the intertwinement principle to other threshold questions, including personal jurisdiction, venue[7], choice of law, and *forum non conveniens*." In other words, the Court used the examples relied upon in *Pavey*—subject matter jurisdiction, personal jurisdiction, and venue—to conclude that "federal courts across a variety of contexts . . . resolve factual

---

[5] Notably, in *Pavey*, the Seventh Circuit did just the opposite saying, "[T]he alternative of trying the merits before exhaustion, as under the *Beacon Theaters* line of cases, is unsatisfactory in the present setting because it would thwart Congress's effort to bar trials of prisoner cases in which the prisoner has failed to exhaust his administrative remedies." *Pavey*, 544 F.3d at 742.

[6] This view in *Pavey* on subject matter jurisdiction is also different than the Supreme Court's view in *Perttu*. *See Pavey*, 544 F.3d 739 ("The clearest example is subject-matter jurisdiction; often it turns on factual issues that may be genuinely debatable, but even if so, the issues are resolved by the judge.").

[7] *Pavey* again had a differing view than the Supreme Court, citing to personal jurisdiction and venue questions in *support* of denying a jury trial right on exhaustion. *Pavey*, 544 F.3d 739.

disputes that are intertwined with the merits at the merits stage . . . The PLRA's complete silence on that question is therefore 'strong evidence' that this 'usual practice should be followed.'" *Perttu*, 145 S. Ct. at 1804 (quoting *Jones*, 549 U.S. at 212). Finally and contrary to *Pavey*'s purposivist conclusion that affording prisoners a jury trial right to exhaustion questions would "thwart Congress's effort to bar trials of prisoner cases in which the prisoner has failed to exhaust his administrative remedies", *Pavey*, 544 F.3d at 742, the Supreme Court concluded that "[w]e . . . cannot agree . . . that the PLRA's general interest in conserving judicial resources shows that Congress clearly intended judges to resolve exhaustion disputes in this unique circumstance." Therefore, the Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Perttu*, 145 S. Ct. at 1807.

### III

### A

In light of all the foregoing, the first issue this Court must decide is whether a genuine dispute as to any material fact related to exhaustion exists. *Jones*, 124 F.4th at 467 (quoting FED. R. CIV. P. 56(a)). The answer to this question is easy: there are most definitely several disputes regarding material facts related to exhaustion, as conceded by even the Defendants. (D. 95 at ECF pp. 34-35). Plaintiff has presented some evidence that the grievance process was unavailable to her due to the threats, intimidation, and actions of some Defendants and correctional officers. (D. 91 at ECF pp. 5-6). The Defendants deny they or anyone else threatened or intimidated Plaintiff regarding the filing of complaints and grievances. Facts in the record as they currently exist could support reasonable inferences either way. For example, Defendants argue that because Plaintiff filed grievances related to other matters during the period of time when she claims she was unable to file

grievances related to the July 19, 23, and 27, 2022 incidents, the filing of those other grievances support an inference that the claim of unavailability of the process is untrue. However, as Plaintiff argues, it does not necessarily follow that the ability to file grievances on some issues at some times entails the ability to file grievances on all issues at all times.

In other words, there are basic credibility determinations that need to be made regarding the facts related to Plaintiff's claim that the grievance and complaint procedures at Pontiac as they relate to her claims in this case were unavailable.   In the ordinary case, the existence of these genuine disputes regarding material facts of an affirmative defense would result in the denial of summary judgment and the matter would proceed to a jury trial, where the jury would resolve these disputes along with the merits. However, as discussed *supra,* not so in the PLRA context because of *Pavey*.

<strong>B</strong>

<strong>1</strong>

 Assuming *Pavey* still has some authoritative effect post-*Perttu*, this Court must next decide whether the disputed material facts related to exhaustion must be decided by the undersigned at a *Pavey* hearing or by the jury at trial. To answer this question, the Court must decide whether the factual disputes related to exhaustion are "intertwined" with the merits issues. *See Perttu*, 145 S. Ct. at 1807. Unfortunately, the Supreme Court says nothing about what it means for the exhaustion and merits questions to be "intertwined."

Plaintiff argues that exhaustion and merits issues are intertwined if they share common questions, such as the credibility of the same witnesses. For example, in order to decide the disputed exhaustion questions in this case, the fact-finder will need to make credibility determinations regarding the testimony of Plaintiff, some Defendants, and some other witnesses.   The fact-finder on the

16

merits issues will need to make credibility determinations regarding these same people. Although the elements for the exhaustion affirmative defense and the merits of the three claims in the Complaint are different, they all require a fact-finder to make a credibility determination about the same witnesses. Thus, according to Plaintiff, the exhaustion and merits questions are intertwined, for splitting the fact-finding function between the judge and jury on these questions in the same case risks contrary outcomes on the credibility of the same witnesses, albeit on different issues.

Defendants on the other hand argue that in order for exhaustion and merits issues to be intertwined, both the exhaustion and merits issues must involve a finding on the same or similar elements. In this case, Plaintiff asserts claims of excessive force, failure to intervene to prevent the use of excessive force, and failure to provide adequate medical care for the injuries sustained from the excessive force. She does *not* assert a First Amendment violation related to her attempts to file grievances. Defendant argues that in order for Plaintiff to prove any of her claims, a jury need not make any finding regarding whether or not correctional officers interfered with her ability to file grievances. Thus, the exhaustion issues and the merits issues are not intertwined, because finding facts related to the grievance process does not require the finding of any facts necessary to also decide the merits.

**2**

Since the Supreme Court does not explicitly define or explain what it meant by "intertwined" in this context, the "Ordinary-Meaning" canon of statutory instruction directs the Court to first examine the ordinary meaning of the word. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: INTERPRETATION OF LEGAL TEXTS 69-77 (2012). However, the relevant dictionary definition of "intertwined," "to become mutually involved," is not terribly helpful. *Merriam-Webster's Collegiate*

*Dictionary* (11th ed. 2020). This definition just raises a new question of what it means to be "mutually involved."

Five district courts have directly addressed what it means for exhaustion and merits to be intertwined. Most recently in *Lipscomb v. Connor*, No. 24-CV-1760-DWD, 2025 WL 2105864 (S.D. Ill. July 28, 2025), the inmate Plaintiff asserted Fourth and Eighth Amendment claims, along with a state law intentional infliction of emotional distress claim. District Judge Dugan found *Perttu* inapplicable because:

> the underlying claims here sound under the Fourth or Eighth Amendments concerning conduct during a strip search by Defendant Connor, whereas Plaintiff's ability to access the grievance process is a distinct issue that Plaintiff experienced in the cellhouse that he presented to his counselors, and that he does not attribute in any way to Defendant Connor. The availability of the grievance process will likely turn on testimony of Plaintiff, and a counselor or grievance personnel. There is no indication any testimony or evidence concerning Defendant Connor's alleged actions would be necessary to resolve the issue of the availability of the grievance process. The Court does not find that resolving issues of this nature will in any way be intertwined with the merits of the Fourth or Eighth Amendment claims.

*Lipscomb*, 2025 WL 2105864, at *4. This reasoning suggests that, perhaps, had the exhaustion and merits claims involved the testimony of some of the same witnesses, then the claims would have been intertwined such that *Perttu* would apply, much like Plaintiff argues in the present case.

In an earlier case also decided by Judge Dugan, *Daniels v. Wills*, No. 24-CV-1397-DWD, 2025 WL 1984343 (S.D. Ill. July 17, 2025), the court ordered additional briefing on whether the exhaustion and merits issues were possibly intertwined. In doing so, the court stated:

> Plaintiff's case does involve two retaliation claims, but these claims do not deal directly with the grievance process. By contrast, in *Perttu*, the plaintiff's operative claim was that a guard retaliated by

> destroying his grievances. Thus, the factual analysis in *Perttu* about the availability of remedies was the same for the exhaustion issue and the merits of the claim. Here, it appears unlikely that the factual analysis for exhaustion will be identical to the analysis for the two substantive claims. While it is true that the exhaustion issue may tangentially relate to Wills, it is also possible that the grievance process and availability could be discussed entirely separate from Wills. Generally speaking, an inmate deals with prison employees in the cellhouse about access to the grievance process, rather than directly with the Warden. In this way, it is likely the parties could establish a full record to determine exhaustion without implicating the substantive claims against Wills.

*Daniels*, 2025 WL 1984343, at *3. Although the court did not ultimately decide the issue, here Judge Dugan noted that in *Perttu* the factual analysis for exhaustion and the merits was "the same", but not in the case before him, as "it appears unlikely that the factual analysis will be identical to the analysis for the two substantive claims." *Id.* Although this assertion seems to endorse the Defendants' approach, Judge Dugan also seemed to attach importance to the fact that the exhaustion issue could be "discussed entirely separate" from the Defendant in the case, suggesting an approach more similar to the one he used in *Lipscomb*.

Magistrate Judge Mensah in *Marsh v. Reckert*, No. 4:23-CV-00128-SPM, 2025 WL 1928608 (E.D. Mo. July 14, 2025), took an approach similar to the one favored by the Defendants in this case, distinguishing *Perttu* because:

> In *Perttu*, ruling on the exhaustion issue necessarily required the court to decide factual questions material to the plaintiffs' substantive First Amendment claims: whether the defendant tore up the grievances and threatened the plaintiffs with retaliation if they filed additional grievances. Here, in contrast, Marsh has asserted no claim that his constitutional rights were violated through the ignoring or destruction of his IRR or through any other actions related to administrative remedies. Deciding whether Marsh exhausted his available administrative remedies by submitting an IRR to McFarland on February 22nd, as Plaintiff claims he did, does not require deciding

> any material fact relevant to whether Reckert used excessive force
> against Marsh on February 7th.

*Marsh*, 2025 WL 1928608, at *2. In other words, in Judge Mensah's opinion, the absence of a First Amendment or retaliation claim precluded a finding of intertwinement with the merits.

In *Haynie v. Clarke*, No. 1:23CV00016, 2025 WL 2017881 (W.D. Va. July 14, 2025), Senior District Judge James P. Jones found that the plaintiff was entitled to a jury trial on exhaustion because the exhaustion and merits issues were intertwined. Similar to *Perttu*:

> the facts of that dispute are intertwined with the question of whether
> the defendants violated Haynie's First Amendment rights. Haynie's
> claims stem from allegations that the defendants harassed him for
> filing complaints to prevent him from continuing to use the grievance
> process. He claims that records of many of his complaints are
> unavailable due to the defendants' conduct. Because the defendants'
> treatment of Haynie regarding the grievance process is central to
> Haynie's claims, a ruling on exhaustion would require me to make
> determinations about credibility and the merits of Haynie's
> constitutional claims.

*Haynie*, 2025 WL 2017881, at *4. Like what the Plaintiff argues here, Judge Jones relied on the need to make similar credibility determinations on both the exhaustion and merits issues. On the other hand, like what the Defendants argue here, he also found that a ruling on exhaustion would require him to make a determination on the merits of the plaintiff's claim. It is not clear if Judge Jones would have made the same ruling if credibility determinations were the only overlap between exhaustion and merits issues. *Id.*

Finally, in *Hill v. Tisch*, No. 2:02-CV-3901 (NJC) (AYS), 2025 WL 1871142, at *7–8 (E.D.N.Y. July 7, 2025), District Judge Nusrat J. Choudhury found that exhaustion and merits were not intertwined where the plaintiff raised excessive

force, failure to protect, and deliberate indifference to medical care claims where the complaint did not allege that the Plaintiff attempted to file grievances related to the claims on the merits. The court found no intertwinement because "the merits of plaintiff's claims do not depend on common factual issues." *Id*. at *8.

Given the facts in *Perttu* and the analysis of these district court cases, at least one thing is clear: exhaustion and the merits are intertwined when a plaintiff asserts a First Amendment or retaliation claim in the complaint which requires factual findings common to the exhaustion issue. This circumstance existed in *Perttu* and was critical to the analysis in the cases discussed *supra*. In other words, *Perttu* and its progeny establish that this type of overlap is *sufficient* to establish intertwinement, but is it also *necessary*? This question is more difficult to answer.

**3**

As already discussed, *Perttu* nowhere attempts to define or elaborate on what it means for exhaustion and the merits to be intertwined. From this fact, at least one of two propositions can be deduced. First, perhaps the Supreme Court omitted a definition of intertwinement to *limit* it to the circumstances present in *Perttu, i.e.,* when a plaintiff asserts a First Amendment or retaliation claim in the complaint which requires factual findings common to the exhaustion issue. Such a deduction would mean that this circumstance is both sufficient *and* necessary to establish intertwinement.

However, one could also deduce from the Supreme Court's silence on the definition that it purposefully made it clear what is sufficient to establish intertwinement, but also purposefully left it open for the lower courts to develop what is necessary to establish intertwinement. This proposition is the better of these two deductions.

First, if the Supreme Court in *Perttu* wanted to limit the circumstance of when exhaustion and the merits are intertwined to the factual circumstances of

21

that case, it could have easily stated its holding in such a way as to make that clear. Instead of holding "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment," *Perttu*, 145 S. Ct. at 1807, the Court could have just as easily stated its holding as "parties are entitled to a jury trial on PLRA exhaustion when a plaintiff asserts a First Amendment or retaliation claim in the complaint which requires factual findings common to the exhaustion issue." *See supra*, p. 21. The fact that the Court did not state its holding in this way, but instead stated its holding in a much more general way, is a good indication that the Court intended the lower courts to define what it means for exhaustion and the merits to be intertwined.

Second, interpreting a Supreme Court holding as allowing lower courts to develop the contours of that holding, rather than limiting such a holding to the factual circumstance of that case, is consistent with the Supreme Court's typical approach. For example, in *Perttu* itself, the Court avoided a more expansive ruling on the question of whether *all* PLRA material factual disputes on exhaustion must be decided by a jury, leaving that broader question to be decided by lower courts in cases where a ruling on the broader question could not be avoided.  *Perttu*, 145 S. Ct. at 1800. *See also*, *e.g.*, *Carpenter v. United States*, 585 U.S. 296 (2018) (holding that the government's acquisition of historical cell-site location information constituted a search under the Fourth Amendment but not addressing the acquisition of such data in real-time, leaving room for lower courts to address those issues in the future); *United States v. Jones*, 565 U.S. 400 (2012) (not addressing whether long-term electronic monitoring without physical trespass would also constitute a search, leaving that question open for lower courts to explore); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (holding that a complaint must contain sufficient factual

22

allegations to state a plausible claim for relief, but leaving it to lower courts to define this standard by application in specific cases).

Not limiting *Perttu* to its facts is also consistent with the underlying reasoning of the Court. Remember, the Court began its analysis by noting, "The right to trial by jury is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right has always been and should be scrutinized with the utmost care." *Perttu*, 145 S. Ct. at 1800 (internal quotations and citations omitted). Exercise of this "utmost care" in curtailing this important right supports an interpretation of the holding in *Perttu* which is not as stingily limited as the Defendants suggest. Moreover, as the Court emphasized, the "settled premise" is that PLRA exhaustion is a "standard affirmative defense." *Id.* at 1801. As such, this affirmative defense is "subject to the usual practice under the Federal Rules." *Id.* (internal quotations and citations omitted).  The usual practice for a standard affirmative defense, as the Court noted, is that such questions are submitted to a jury unless some other procedure is "well established". *Id.* at 1802, 1804.

Finally, although one could argue that the "usual practice" for deciding all exhaustion issues in the PLRA context has, at least since *Pavey,* been that such questions are submitted to the judge, not a jury, *Perttu* overrules that central holding of *Pavey.* In doing so, the Supreme Court used the examples the *Pavey* court used, *i.e.*, subject matter jurisdiction, personal jurisdiction, and venue, when referring to PLRA exhaustion as "traffic control," to demonstrate *just the opposite*; the Supreme Court cited each of those examples to support the notion that exhaustion was in fact *different* than those contexts. *Perttu*, 145 S. Ct. at 1804 ("when the PLRA was enacted, many lower court decisions and treatises had extended the intertwinement principle to other threshold questions," including personal jurisdiction, venue, choice of law, and *forum non conveniens*)*; contra Pavey*, 544 F.3d

at 741 ("The generalization that emerges from these examples and others that might be given is that juries do not decide what forum a dispute is to be resolved in. Juries decide cases, not issues of judicial traffic control."). Given that the detailed procedures set out by the court in *Pavey* "to be followed" by lower courts in PLRA exhaustion cases is *dicta*, it is entirely unclear what, if any, of that opinion survives its gutting by *Perttu*. *See Crawley*, 837 F.2d at 292 ("What is at stake in distinguishing holding from dictum is that a dictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject."). In other words, without the authority of *Pavey*, there is very little, if anything, to support deviating from the "usual practice" of submitting questions related to affirmative defenses to a jury, except some judicial attempt to avoid "thwarting" what a court perceives to be Congress's intent in enacting 42 U.S.C. § 1997e(a). Although the court in *Pavey* invoked this policy as part of its reasoning, the best place to locate the intent of Congress is in the *text* of § 1997a(e), which is silent on the question. *Perttu*, 145 S. Ct. at 1801 ("The PLRA is similarly 'silent on the issue' whether judges or juries should resolve factual disputes related to exhaustion. The exhaustion provision states simply that '[n]o action shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted.' 42 U.S.C. § 1997e(a).").

With this legal context in mind, the Court finds that the factual circumstances in *Perttu*, *i.e.,* the complaint alleges retaliation or a First Amendment violation related to interference with administrative remedies, is sufficient, but not necessary, for exhaustion and the merits to be intertwined. This is so because as set forth *supra*: 1) the Supreme Court could have easily, but did not, state its holding to limit intertwinement to the factual circumstance of that case; 2) the Court oftentimes does not limit opinions to their facts, which allows lower courts to explore the contours of the Court's holdings; 3) the Court emphasized the

24

importance of the Seventh Amendment jury trial right, the usual practice for affirmative defenses being submitted to a jury for disputed facts; and 4) the Court undercut the reasoning in *Pavey,* which is the only real authority for submitting exhaustion questions to a judge instead of a jury in the first place.

**4**

Having determined that the pleading of a First Amendment or retaliation claim in the complaint is not necessary to establish intertwinement of exhaustion and the merits, the Court must next determine whether the facts in this case are sufficient to establish intertwinement. The Court concludes that they are.

First, the credibility of the testimony of the Plaintiff, some Defendants, and some of the same non-party witnesses will be central to both the exhaustion and merits claims, albeit on different issues. For example, on the exhaustion question, the fact-finder will need to decide whether to believe the Plaintiff or some of the Defendants regarding the claim that she was prevented from filing grievances related to the events alleged in the Complaint. On the merits questions, a fact-finder will also need to make the same credibility determination regarding some of the same parties and witnesses, even though on these questions the fact-finder will be deciding who to believe regarding questions related to the use of excessive force and medical care.

The necessity of a fact-finder to make a credibility determination regarding the parties and some of the same witnesses involves "intertwinement." Having presided over numerous *Pavey* hearings and prisoner civil rights trials on the merits, this Court knows that often the primary evidence regarding interference with the grievance process and the merits is the credibility of the parties and witnesses. In other words, *the* determinative factual finding made on both exhaustion and the merits is who to believe. This type of credibility finding falls within the core function of juries, not judges; it is precisely why in the usual

summary judgment context, the only question is whether a genuine dispute exists regarding a material fact. *See* FED. R. CIV. P. 56(a). If a dispute regarding the credibility of witnesses exists at summary judgment, the usual practice is not for the judge to resolve that dispute; the usual practice is to deny summary judgment and send the issue to a jury. *Id.* When the credibility of the same parties and witnesses are central to both exhaustion and the merits, they are intertwined or "mutually involved." Intertwined, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020). A jury, not a judge, should make the credibility determination.

Second, finding intertwinement when mutual credibility determinations are required for both exhaustion and the merits is consistent with at least some of the cases to have considered the intertwinement question since *Perttu*. *See Lipscomb*, 2025 WL 2105864, at *4 (finding exhaustion and merits not intertwined where there was no indication any testimony or evidence concerning the defendants' alleged actions would be necessary to resolve the issue of the availability of the grievance process); *Daniels*, 2025 WL 1984343, at *3 (stating that while it was true that the exhaustion issue may tangentially relate to the defendant, it is also possible that the grievance process and availability could be discussed *entirely separate* from the defendant)(emphasis added); *Haynie*, 2025 WL 2017881, at *4 (citing common credibility findings as part of the reasons why the court found exhaustion and merits questions to be intertwined; *but see Marsh*, 2025 WL 1928608, at *2 (looking to a lack of claims in the complaint related to exhaustion); *Hill*, 2025 WL 1871142, at *8 (same).

Third, submitting credibility questions of the same witnesses to two different fact-finders in the same case risks undermining the respect and dignity of the judicial process. For example, if the question of whether a correctional officer preventing an inmate plaintiff from availing herself of the grievance process hinges on the credibility of the parties, a judge at a *Pavey* hearing could find the

plaintiff credible and allow the case to proceed on the merits.  Then, if at the merits stage the question is whether that same correctional officer used excessive force on the plaintiff and if that question also hinges on the credibility of the parties, the jury could find the correctional officer credible and rule for the defendant. True, the judge is weighing the credibility of the parties on a different question than the jury, but only a lawyer or judge could find such a fine distinction to be of significance.  Juries, comprised of ordinary citizens, do not tend to find witnesses truthful on one critical issue and lying on another; generally, if a fact-finder thinks you are lying about A, then they are skeptical you are telling the truth about B. Allowing these kind of contradictory credibility findings in the same case undermines the legitimacy of the truth finding function of the judicial process.

Fourth, having two fact-finders in the same case make credibility determinations of the same witnesses is a waste of judicial resources and does not "thwart" Congress's intention to bar trials of prisoner cases in which the prisoner has failed to exhaust his administrative remedy", as the court mused in *Pavey*, 544 F.3d at 742. Many prisoner cases require no credibility determination at all on the question of exhaustion and are resolved on summary judgment in the usual manner, *i.e.*, a judge finds that no genuine dispute exists on a material fact such that the case is dismissed for failure to exhaust. *Wagoner*, 778 F.3d at 588 ("Often exhaustion (or its lack) will be apparent…"). There is no limitation on when such a motion for summary judgment may be filed, and a judge has discretion under Federal Rule of Civil Procedure 26 to regulate how and when discovery on exhaustion will occur. Only in the set of cases where a genuine material dispute regarding exhaustion exists must a court conduct a *Pavey* hearing, where the central question will almost always involve the credibility of the plaintiff. Sometimes a court may find the plaintiff credible, sometimes not. Only in the subset of cases where a judge finds the plaintiff is not credible will the case end.

In all other cases, the case will proceed to the merits. In other words, in only a small fraction of cases does the case end early via the benefit of a *Pavey* hearing. In cases which survive a *Pavey* hearing, had the exhaustion issue been left to the jury in the first instance, the needless briefing, argument, and ruling by the judge (not to mention the additional time all this takes) could have been avoided. In the end, there is a good argument to be made that *Pavey* hearings are largely a waste of time, inject undue delay in resolution of cases, and drain judicial resources.

## IV

For all these reasons, the Court holds that it is sufficient for exhaustion and merits issues to be intertwined when a fact-finder must make a credibility determination regarding the testimony of the plaintiff, a defendant, and the same non-party witnesses. Such is the case here, there is a genuine dispute of material fact concerning exhaustion, and the jury must resolve that dispute at trial.[8] What else, if anything, of *Pavey* survives *Perttu* is a question for another day in another case. *Perttu* makes clear, however, that the Seventh Amendment right to a jury trial is more than "traffic control."

*It is so ordered.*

Entered on August 11, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

---

[8] The Defendants asserted at oral argument that should the Court find that the exhaustion issue was intertwined with the merits, a separate jury trial on exhaustion should be held first and, depending on the outcome, then one on the merits. The Court rejects that novel approach as both contrary to the usual practice of holding a single jury trial in a single case and terribly inefficient.